ARTHUR J. WHALEN, ADMINISTRATOR, APPELLEE, V. FRANK
J. SWIRCIN ET AL., APPELLANTS.

4 N. W. (2d) 737

FILED JUNE 26, 1942. No. 31324.

 

 

*Duncan M. Vinsonhaler* and *J. W. Weingarten,* for appellants.

*Samuel L. Winters, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, CARTER, MESSMORE and YEAGER, JJ.

CARTER, J.

This is an appeal from a decree in favor of plaintiff as administrator of the estate of Agnes Johnson, deceased, holding that a purported trust arrangement did not exist and decreeing that the trustee, Frank J. Swircin, should account for the funds constituting the subject of the purported trust. A distribution of the funds having been made before this suit was commenced, judgment was entered against the trustee for $16,712.39, the amount distributed, and jointly with him against the beneficiaries of whom the court had jurisdiction in the several amounts paid them. Judgment was also entered against the surety on Swircin's executor's bond for $500, the amount of such bond. All defendants against whom judgments were entered have appealed.

The record discloses that Agnes Johnson died on February 20, 1940, leaving a will dated February 25, 1938, and a codicil thereto under date of March 1, 1939, by which she devised her estate equally to her brothers and sisters, or their representatives. The will appointed Swircin as her executor and requested that he serve without bond. The will and codicil made no provision for any bequest to the brothers and sisters of her deceased husband.

Giving the evidence a construction most favorable to appellee, the situation is as follows: About a week after making the last codicil to her will, Agnes Johnson withdrew her funds from various building and loan associations and other sources not disclosed by the record in the amount of $18,-

167.39, and delivered them to Swircin, with instructions for him to place them in a safety deposit box in his own name. According to Swircin's own testimony, the money was to be retained by him until her death and at that time distributed in varying amounts to beneficiaries named by her, including the relatives of her deceased husband, conditional only that the money was held subject to her use as she desired during her lifetime and that if any of the beneficiaries were in immediate need the trustee was to advance money to them from the trust fund. The record is clear that Agnes Johnson never had possession of the funds again. The trustee did not reinvest the funds, but kept them in currency in the safety deposit box as directed. Subsequently, Agnes Johnson informed Swircin to withdraw $1,000 from the trust fund for Elva Brown, a sister of Agnes Johnson's husband, for the reason that she was in need. This was done. Later she requested $400 to pay medical and doctor bills and at a still later date she requested $50 to pay another doctor bill. These amounts were paid to her out of the trust fund. At her suggestion, Swircin reimbursed himself with $5 for the rental of the safety deposit box. A total sum of $1,455 was consequently withdrawn during the lifetime of Agnes Johnson, leaving a balance of $16,712.39 in the possession of Swircin at her death. The question for determination is whether this constitutes a valid trust or a testamentary disposition of the property which is void for noncompliance with the statute governing the execution of wills.

The essential difference between such a trust and a will is that the former acts at once to vest the interest in the beneficiaries, although enjoyment is postponed until the death of the settlor, while the latter does not take effect until death and until then no interest can vest. 1 Perry, Trusts (7th ed.) 119. There is also the further distinction that under the trust the legal title to the property, with its incidents, and the control and management of it pass to the trustee, whereas, in the case of a will, legal title and full control are in no way affected during the life of the testator. *Lewis v. Curnutt*, 130 Ia. 423, 106 N. W. 914.

It is not disputed, and it must be conceded, that a trust can be orally established. The evidence in this case clearly shows that the funds were delivered to Swircin at the time the trust was created, that the possession of the funds in question remained with the trustee at all times thereafter and that the settlor parted with her title to the funds at that time and vested it in the trustee.

As a general rule, a power of revocation of the trust may be reserved and such power of revocation is consistent with a valid trust. The great weight of authority is to the effect that a reservation by the settlor of the income from the trust does not invalidate it. *Cramer v. Hartford-Connecticut Trust Co.*, 110 Conn. 22, 147 Atl. 139; *Windolph v. Girard Trust Co.*, 245 Pa. St. 349, 91 Atl. 634. It was clearly the intention of the settlor to part with the legal title, and the reservation to herself of a part of the principal amount did not of itself invalidate the trust. In *Van Cott v. Prentice*, 104 N. Y. 45, 10 N. E. 257, the court analyzed the situation in the following language:

"Neither the power of revocation nor the provisions determining the trust in the event of a legal interference, or the death of the trustee in the life of the settlor, are in the least inconsistent with the trust as completely and perfectly constituted. They both assume its separate and effective existence, and provide merely for its termination upon the happening of specified contingent events. But attention is called to the clauses in the deed which require the trustee to hold and manage the fund subject to the direction and control of the settlor, and deny to the beneficiaries any legal or equitable right to either principal or interest. The latter provision is plainly but an amplification of the idea involved in the power of revocation, for the grantor adds that the beneficiaries shall take what they receive as proceeding from his bounty and subject to his right to revoke at any moment. * * * Since he intended to create an effective trust, and declared that he had done so, and delivered the possession and passed the title of the fund to the selected trustee, we are bound to understand his denial of an equitable right

to the beneficiaries as meaning only to emphasize his own control flowing from the voluntary character of his act and his reserved power of revocation; as a supposed and actual result of his own right to end his bounty at any moment; and not as a denial of the right of the beneficiaries to enforce the trust, as against the trustee, while it should remain in existence, and the settlor, withholding his power of revocation, should permit it to stand. His meaning undoubtedly was, that as against himself and his own freedom of action, the beneficiaries should possess no legal or equitable right, and not that as against the trustee, while the settlement stood unrevoked, there should be no equitable recourse. * * *

"What has just been said is also quite applicable to the other provisions which have been the subject of comment and which require that the trustees shall hold the fund subject to the direction and control of the settlor until his death. That language only repeats in another form the effect of the reserved power of revocation. The existence of that inevitably leaves in the settlor an absolute control, since at any moment he may end the trust and resume possession of the fund as his own. The trustee is directed to hold the fund and invest and reinvest and pay over as ordered, but is to do all this subject to the settlor's absolute control. This cannot mean that the trustee is to have no title and the trust no effective existence, and the property remain the settlor's, but that the trust and the title, good and effectual while it stands, is, nevertheless, to continue and exist only at the will and pleasure of the settlor. Its continued existence was to be absolutely subject to the direction and control of Prentice, a result always inevitable where a power of revocation is reserved." See, also, *Keck v. McKinstry*, 206 Ia. 1121, 221 N. W. 851; *Kelley v. Snow*, 185 Mass. 288, 70 N. E. 89.

In *Kelly v. Parker*, 181 Ill. 49, 54 N. E. 615, an instrument in the form of a deed of trust conveying land in trust for certain persons was held to give rise to a valid trust, and not to be testamentary in nature, although the settlor reserved to himself during his lifetime the right to use, occu-

py, control, improve and lease the property for any term of years, and to use and enjoy the rents and profits thereof in the same manner as if he were the owner in fee simple, to mortgage, sell and convey the property or any part thereof for his own benefit, and to revoke the trust altogether, the court stating that the deed had the effect of conveying the property absolutely to the trustees at the time it was executed, subject to the reservations, conditions, and trusts incorporated therein.

A case very much in point is *Jones v. Old Colony Trust Co.*, 251 Mass. 309, 146 N. E. 716, where a transfer of bank deposits and securities passing the legal title and possession of the property to a trustee, who was to hold, manage, invest and reinvest the property in its sole discretion, to pay the income to the settlor or according to her directions during her lifetime and at her decease to liquidate and distribute the fund among named beneficiaries, was held to be valid, notwithstanding a reservation by the settlor of the power to alter or amend the trust instrument in writing and to require the trustee to pay over to her "at one time or from time to time such portion or all of the principal of the trust fund as may be requested" by her in writing.

In *Rosenburg v. Rosenburg*, 40 Hun (N. Y.) 91, the court made this significant statement: "Trusts may be created by will or *inter vivos* with the power in the trustee to pay and a right in the *cestui que trust* to receive, not merely the income but the principal of the fund, as needed or called for. It is true that all the funds may have been drawn for the support and maintenance of the creator of the trust, but that did not affect the legal title to the property in the hands of the trustee * * * ."

The record indicates a clear intent on the part of the settlor to create a trust. The settlor did everything that she could do to divest herself of title by transferring it to the trustee and delivering the possession of the trust property to him. There is nothing in the record to indicate an intent to make a testamentary disposition of the fund under the guise of a trust. The reservation of the principal of the

trust fund, if needed, is nothing more than a reserved power of revocation. The withdrawals of principal amount to a revocation *pro tanto* of the trust to the extent of the withdrawals. The fact that withdrawals of principal may be made by the settlor does not mean that the trustee has no title to the fund and the trust no effective existence, but that the trust is to continue and exist at the will of the settlor. But if the fund, or any part thereof, is permitted by the settlor to remain in existence, it does not work a denial of the right of the beneficiaries to enforce the trust as against the trustee. See 1 Restatement, Trusts, sec. 58.

We conclude that the record demonstrates that Agnes Johnson intended to and did create a trust fund with Swircin as trustee. Any other conclusion under the facts of this case would require an assumption that Agnes Johnson was doing a vain thing in placing the title and possession of these funds with Swircin. The mere fact that settlor may have desired to avoid a compliance with the statute pertaining to the execution of wills, or to avoid the necessity of probate administration, will not void the trust. 1 Restatement, Trusts, sec. 57, Comment d. We think the trial court was in error in holding that the trust failed because of its testamentary character. The trust was valid to the extent of the funds in the hands of the trustee at the death of the settlor.

Appellants ask this court to make an allowance of attorney's fees to be taxed against the plaintiff as administrator by invoking the equitable power to so do where the suit was without foundation and was vexatious and oppressive. The questions raised by the administrator are not in our judgment subject to the charge of being vexatious and oppressive. Matters were presented by his suit which had not been previously determined by this court. The creation of a trust without the formality of writing is a frequent source of litigation in the determination of its validity and the ascertainment of its true terms. This leads us to the conclusion that the cases cited by appellants, *Gazan v. Vadsco Sales Corporation,* 6 Fed. Supp. 568, and *Sprague v. Ticonic Nat. Bank,* 307 U. S. 161, 59 S. Ct. 777, are without application to the case at bar.

Other matters raised are not necessary to a decision of the case in view of the conclusion reached.

For the reasons stated, the judgment of the district court is reversed and the cause remanded to the district court for further proceedings made necessary by the levy of executions upon the property of some of the appellants notwithstanding the appeal. *Anheuser-Busch Brewing Ass'n v. Hier*, 55 Neb. 557, 75 N. W. 1111.

REVERSED.