IN RE WENDLAND-REINER TRUST.
JOHN M. MCHENRY, SUCCESSOR TRUSTEE, APPELLEE, V.
ROSELLA L. REINER, APPELLEE, AND
JOHN R. WENDLAND, APPELLANT.
677 N.W.2d 117

Filed April 2, 2004.   No. S-02-1395.

Patrick D. Timmer, of Pierson, Fitchett, Hunzeker, Blake & Katt, for appellant.

Jeanette Stull, of Perry, Guthery, Haase & Gessford, P.C., L.L.O., for appellee Rosella L. Reiner.

WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

This appeal involves a revocable trust created by Charles W. Phillips. The trust agreement granted Phillips, as settlor, the right to amend the terms of the trust agreement "by instrument in writing delivered to the Trustee." Phillips named himself as the trustee and funded the trust with an annuity issued by Hartford Life Insurance Company (Hartford). Before his death, Phillips sent a letter to Hartford directing Hartford to alter the amount to be paid to one of the beneficiaries of the trust. The issue is whether the letter amended the trust agreement. We conclude that Phillips' letter amended the trust agreement and affirm the trial court's decision.

## BACKGROUND

Phillips created the trust on June 25, 1993. The trust agreement provided that the trustee would make monthly payments of $1,000 to Rosella L. Reiner until her death. After her death, the trust was to be liquidated and the proceeds paid in equal shares to Phillips' grandsons, Robert J. Wendland and John R. Wendland, as remainder beneficiaries. In addition, the trust agreement provided: "So long as he lives (except during any period of adjudicated incompetency) the Grantor [i.e., Phillips] shall have the right, by instrument in writing delivered to the Trustee: . . . B. Amendment of Agreement: To amend this Agreement in any and every particular." Phillips named himself as the trustee. He deposited $181,876.38 into the trust and used those funds to purchase an annuity issued by Hartford.

On March 10, 1995, Phillips sent a letter to Hartford. The body of the letter provided:

I am the trustee of the Wendland-Reiner Trust [d]ated 06-25-93. The annuitant is Rosella L. Reiner.

> Effective immediately, I want to have systematic monthly withdrawals in the amount of $500.00. . . . Please send these monthly payments to the annuitant, Rosella L. Reiner. . . .
>
> Please make the first payment on March 1, 1995 and subsequent payments on the first of each following month.
>
> I understand that the taxes on these withdrawals will [be] paid by the trust . . . . I further understand that I reserve the right to change the amount of the systematic withdrawals at any time. Please note that my signature has been guaranteed.

The signature block of the letter read "Charles W. Phillips, Trustee," and the letter was signed by Phillips. Hartford complied with the letter and lowered the amount of monthly payments to Reiner to $500.

Phillips sent three more letters to Hartford, each of which directed Hartford to change the amount of the monthly payments that were to be made to Reiner. Hartford complied with the letters. For our purposes, the final letter, dated May 22, 1997, is the most important. It directed Hartford to increase the amount of the monthly payments to $2,000. Like the other two letters, it was substantially similar in all other respects to the March 10, 1995, letter.

In addition to the letters directing Hartford to increase the amount of Reiner's monthly payments, Phillips sent two letters directing Hartford to make one-time lump-sum withdrawals and to pay the money to Reiner. The first letter, sent in October 1997, requested a $5,000 withdrawal, and the second, sent in December 1997, requested a $6,000 withdrawal; Hartford complied with both letters.

Phillips died in January 1999. After Phillips' death, Reiner continued to receive $2,000 monthly payments until March 1, 2002. At that time, the first successor trustee, Harry L. Wendland, reduced the amount of the monthly payments to $1,000, the amount originally specified in the trust agreement.

Harry Wendland subsequently resigned as successor trustee, and the Lancaster County Court appointed John M. McHenry as the second successor trustee. McHenry then filed a petition for trust administration proceedings. In it, he asked the court to

determine whether the May 22, 1997, letter amended the trust agreement by increasing the amount of Reiner's monthly payments to $2,000. In Reiner's answer, she alleged that the letter amended the terms of the trust agreement and that she was therefore entitled to receive $2,000 per month. In the remainder beneficiaries' answer, they alleged that the letter failed to meet the trust agreement's requirements for amendment and that therefore, the original language of the trust agreement setting the amount to be paid to Reiner at $1,000 per month controlled.

The county court concluded that the May 22, 1997, letter amended the trust agreement. It ordered McHenry to reimburse Reiner for all shortages in payments since March 1, 2001, and to increase the amount of all future payments to $2,000.

## ASSIGNMENTS OF ERROR

John Wendland, one of the remainder beneficiaries, assigns, restated and consolidated, that the court erred in (1) finding that the May 22, 1997, letter was a valid amendment to the trust agreement; (2) ordering the successor trustee, McHenry, to reimburse Reiner for all shortages in payments since March 1, 2001; and (3) ordering McHenry to increase the future payments to Reiner to $2,000 per month.

## STANDARD OF REVIEW

In the absence of an equity question, an appellate court, reviewing probate matters, examines for error appearing on the record made in the county court. *In re R.B. Plummer Memorial Loan Fund Trust*, 266 Neb. 1, 661 N.W.2d 307 (2003). In instances when an appellate court is required to review cases for error appearing on the record, questions of law are nonetheless reviewed de novo on the record. *In re Guardianship & Conservatorship of Garcia*, 262 Neb. 205, 631 N.W.2d 464 (2001).

## ANALYSIS

The settlor of a trust may reserve the power of revocation or amendment, and such a power is consistent with a valid trust. *Whalen v. Swircin*, 141 Neb. 650, 4 N.W.2d 737 (1942). Phillips expressly reserved the power to amend the trust agreement. The issue is whether by sending the letter to Hartford, Phillips exercised the power to amend the trust agreement. The remainder

beneficiary makes two arguments for why the letter did not amend the trust agreement. First, he argues that Phillips did not express the intent to modify the trust agreement in the letter. Second, he argues that even if Phillips intended to amend the trust agreement with the letter, sending the letter to Hartford did not comply with the procedure for amendment set out in the trust agreement.

## INTENT TO MODIFY TRUST AGREEMENT

We must first determine whether Phillips expressed the intent to modify the trust agreement in the letter to Hartford. The parties agree that to do this, we must interpret the letter. We treat this as a question of law on which we have an obligation to reach a conclusion independent of that of the trial court. Accord *Smith v. Smith*, 246 Neb. 193, 517 N.W.2d 394 (1994) (interpretation of language of trust is matter of law).

The rules of construction for interpreting a trust are applied when the language of the trust is not clear; but if the language clearly expresses the settlor's intent, the rules do not apply. *Wahrman v. Wahrman*, 243 Neb. 673, 502 N.W.2d 95 (1993). The remainder beneficiary points out that in the letter, Phillips did not expressly state that he was amending the trust agreement. The remainder beneficiary argues that this clearly shows that Phillips did not intend to amend the trust agreement. We are not persuaded by this reasoning. Neither the express terms of the trust agreement nor the law required Phillips to expressly recite that he was amending the trust agreement in order to make an amendment effective. See *In re Estate of Davis*, 775 A.2d 1127 (Me. 2001). Further, the letter refers to the trust, suggesting that Phillips contemplated that the letter would affect the trust. At best, the language of the letter is unclear, and we thus turn to the rules of construction.

The primary rule of construction for trusts is that a court must, if possible, ascertain the intention of the testator or creator. *Smith v. Smith, supra*. When there are two or more instruments relating to a trust, they should be construed together to carry out the settlor's intent. *Estate of Taylor*, 361 Pa. Super. 395, 522 A.2d 641 (1987). Here, the letter makes reference to the trust. Thus, in deciphering what Phillips intended with the letter, we consider both the original trust agreement and the letter.

We conclude that Phillips' intent can be determined because the letter is inherently inconsistent with the original terms of the trust agreement. The letter ordered Hartford to increase the amount of the distributions Reiner was receiving from the annuity. The annuity formed the corpus of the trust. Thus, altering the amount of the distribution which Hartford was paying to Reiner fundamentally modified the relationship between the parties to the trust by increasing the amount Reiner was receiving at the expense of the remainder beneficiaries' interests. This shows that Phillips intended to amend the trust agreement. Cf. *In re Estate of Davis, supra* (holding that when second trust was inconsistent with terms of first trust, inconsistency indicated that second trust was intended to modify first trust).

### PROCEDURAL REQUIREMENTS FOR AMENDMENT

Next, the remainder beneficiary argues that even if Phillips intended to amend the trust agreement with the letter, sending it to Hartford did not comply with the procedure for amendment set out in the trust agreement.

We have never addressed whether a settlor's failure to strictly follow the procedures for amendment set out in a trust agreement renders an attempted amendment invalid. Courts in other jurisdictions require varying levels of compliance with the amendment procedures set out in a trust agreement. Some courts adhere to a strict compliance standard which requires that "[i]f a particular mode is specified, that method must be strictly complied with in order for the modification to be effective." *Lourdes College of Sylvania, Ohio v. Bishop*, 94 Ohio Misc. 2d 51, 57, 703 N.E.2d 362, 366 (1997). See, also, 90 C.J.S. *Trusts* § 115 (2002). The modern trend, however, backs away from strict compliance. Both the Restatement (Third) of Trusts and the Uniform Trust Code provide that a settlor may amend a trust by substantially complying with a method set out in the terms of the trust. See, Restatement (Third) of Trusts § 63, comment *i.* (2003); Unif. Trust Code § 602(c)(1), 7C U.L.A. 183 (Cum. Supp. 2000). Accord *Williams v. Bank of California*, 96 Wash. 2d 860, 639 P.2d 1339 (1982). In addition, under both the Restatement and the Uniform Trust Code, if the trust does not provide a method for amendment or the method provided is not expressly made

exclusive, the settlor's power to amend the trust can be "exercised in any way that provides clear and convincing evidence of the settlor's intention to do so." Restatement, *supra*, § 63(3) at 443. Accord Unif. Trust Code § 602 (c)(2)(B). We note that the Legislature has adopted a *modified* version of Uniform Trust Code § 602. See Neb. Rev. Stat. § 30-3854 (Supp. 2003). However, the operative date of § 30-3854 is January 1, 2005, and thus it does not govern the resolution of this case.

■ Here, it is unnecessary for us to choose between the strict compliance rule and the more modern rule endorsed by the Restatement, *supra*, and the Uniform Trust Code. The trust agreement provided that Phillips could amend the trust agreement "by instrument in writing delivered to the Trustee." The remainder beneficiary argues that the letter to Hartford was not an instrument and was not delivered to the trustee. However, even those jurisdictions that follow the strict compliance rule recognize that provisions requiring the settlor to provide written notice of amendments to the trustee are for the benefit of the trustee. Thus, compliance concerning written notice requirements may be waived by the trustee. See *Merchants National Bank of Mobile v. Cowley*, 265 Ala. 125, 89 So. 2d 616 (1956); *St. Louis Union Trust Co. v. Dudley*, 162 S.W.2d 290 (Mo. App. 1942); 90 C.J.S. *Trusts* § 115 (2002). Here, Phillips was both the trustee and the settlor. As a result, he was in a position to waive the unnecessary formality of giving himself written notification of his intent to amend the trust agreement. See *Argo v. Moncus*, 721 So. 2d 218 (Ala. Civ. App. 1998).

## CONCLUSION

We conclude that Phillips expressed the intent to amend the trust agreement in the May 22, 1997, letter and that any failure to comply with the amendment procedure in the trust agreement was waived. We have considered Reiner's claim that she is entitled to attorney fees under Neb. Rev. Stat. § 30-1601(6) (Cum. Supp. 2002) and find it to be without merit.

AFFIRMED.

HENDRY, C.J., not participating.