744 N.W.2d 514 (2008)
16 Neb. App. 416
In re TRUST OF Joseph E.A. ALEXIS, deceased.
Carl E. Alexis, appellant,
v.
Josephine Molloy et al., Trustees, appellees.
In re Trust of Marjorie E. Alexis, deceased.
Carl E. Alexis, appellant,
v.
Josephine Molloy et al., Trustees, appellees.
Nos. A-06-408, A-06-409.
Court of Appeals of Nebraska.
February 19, 2008.
*518 Patrick D. Timmer, of Pierson, Fitchett, Hunzeker, Blake & Katt, Lincoln, for appellant.
David W. Rowe and Julianne M. Spatz, of Kinsey, Rowe, Becker & Kistler, L.L.P., Lincoln, for appellees.
INBODY, Chief Judge, and CARLSON and CASSEL, Judges.
INBODY, Chief Judge.

INTRODUCTION
Carl E. Alexis (Appellant) appeals the order of the Lancaster County Court in the trust administration action he initiated to obtain interpretation or construction of the last wills and codicils of his grandparents, Joseph E.A, Alexis and Marjorie E. Alexis (collectively Testators). Testators' last wills and codicils established trusts, of which Testators' remaining children, the appellees in this matter, are trustees. The proceedings for Testators' last wills and codicils were consolidated by the county court and remain consolidated on appeal. Because we conclude that the county court misinterpreted the last wills and codicils and is obligated to determine the extent of the trustees' discretion, we reverse, and remand with directions.

STATEMENT OF FACTS
Testators, now deceased, were husband and wife and had four children: Carl Odman Alexis, Josephine Alexis Molloy, Marjorie Alexis Todd, and Hilbert Verne Joseph Alexis. On January 4, 1958, Testators each executed their last wills. The last wills were essentially identical. Testators each disposed of their personal property and household items, made a marital bequest, and devised the residue to their trustees.
After the execution of their last wills, Testators executed nine codicils to their last wills. The last wills and the nine codicils were admitted to probate following the respective deaths of Joseph E.A. Alexis and Marjorie E. Alexis on August 15, 1969, and March 18, 1970. Upon the respective deaths of Testators, both testamentary trusts became irrevocable. Both of the testamentary trusts were confirmed by the county court.
At all times relevant to this case until 2005, all four of Testators' children were acting as trustees. On February 28, 2005, Carl Odman Alexis died, leaving his surviving siblings, the appellees, as trustees.
The trusts were each funded with' parcels of real estate located in Nebraska through the residual distribution of each of Testators' estates. In 1990, upon the recommendation of a farm management firm, the trustees directed the sale of 40 acres and distributed the proceeds equally among themselves. Until the death of Carl Odman Alexis, the trustees directed the annual distribution of the farm income equally among themselves. After the death of Carl Odman Alexis, the surviving trustees directed the distribution of farm income from the trusts equally among themselves, the three surviving children of Testators, with no distribution to the issue of Carl Odman Alexis and his former wife, Maybritt Alexis: Appellant and his sister, Karin Alexis Frenze. Appellant subsequently initiated trust administration *519 proceedings. Because Testators' last wills and codicils are essentially identical, the matters were consolidated for trust administration proceedings.
At the trust administration proceedings, the parties did not dispute that the original last wills granted all of Testators' grandchildren a right to succeed to a present interest in the distribution of income and principal upon the death of their respective parents and that the grandchildren were granted the right to share in the distribution of the remainder of the trust assets upon termination of the trusts after the death of the last of Testators' children. The parties further stipulated that (1) the distribution of trust income is discretionary in the trustees, i.e., the trustees are not required to distribute trust income but are permitted to do so in certain circumstances; (2) whether to encroach upon or distribute the trust principal is discretionary with the trustees; (3) the trusts terminate when the last of Testators' children dies; and (4) upon termination of the trusts, the remaining assets shall be distributed in equal shares to Testators' grandchildren, with the share of any thendeceased grandchild distributed to such grandchild's surviving issue by right of representation.
Additionally, the parties stipulated:
[Appellant] believes that the trustees' direction to the farm management company to make equal distributions of the trusts' net income to the surviving three children of the Testators is contrary to the terms of the trusts. Respondent trustees assert that their direction to the farm management company is pursuant to a correct interpretation of the applicable wills and codicils and the discretionary powers granted to them under the trusts.
We set forth the pertinent portions of the wills and relevant codicils in the analysis portion of this opinion. Because Testators' last wills and codicils are essentially identical for the purposes of our analysis, we will quote the last will and codicils of Joseph E.A. Alexis in the analysis portion of our opinion.
The issues before the county court were (1) what the beneficial interest of Testators' grandchildren was and (2) whether the county court should review the extent of the trustees' exercise of discretion. The county court found that the fourth; fifth, and seventh codicils entirely eliminated Appellant's contingent right to succeed to a present interest in distributions of trust income and principal but left Appellant's remainder interest unchanged. The county court further found that the ninth codicil changed the rights of all the other grandchildren and treats them equally with Appellant and his sister by directing the trustees to distribute income and principal primarily to Testators' children while Testators' children are still living, and only as a final distribution to the grandchildren as remaindermen upon the death of the last of Testators' children. Appellant filed timely appeals, and the appeals were consolidated.

ASSIGNMENTS OF ERROR
Appellant assigns that the county court erred in (1) finding that the fourth, fifth, and seventh codicils entirely eliminated his right to succeed to a present interest in distribution of trust income and principal upon the death of his father, (2) finding that the ninth codicil changed the rights of all of Testators' grandchildren such that only Testators' children were entitled to distributions while Testators' children were still living and that the grandchildren were only entitled to distribution of the remaining assets upon termination of the trusts, (3) finding that it was not proper to review the extent of the trustees' discretion, *520 and (4) not determining that the extent of the trustees' discretion was limited.

STANDARD OF REVIEW
Appeals involving the administration of a trust are equity matters and are reviewable in an appellate court de novo on the record. In re R.B. Plummer Memorial Loan Fund Trust, 266 Neb. 1, 661 N.W.2d 307 (2003).
In the absence of an equity question, an appellate court, reviewing probate matters, examines for error appearing on the record made in the county court. In re Trust Created by Inman, 269 Neb. 376, 693 N.W.2d 514 (2005); In re Trust of Rosenberg, 269 Neb. 310, 693 N.W.2d 500 (2005). When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. Id. In instances when an appellate court is required to review cases for error appearing on the record, questions of law are nonetheless reviewed de novo on the record. Stover v. County of Lancaster, 271 Neb. 107, 710 N.W.2d 84 (2006). An appellate court, in reviewing a district court judgment for errors appearing on the record, will not substitute its factual findings for those of the district court where competent evidence supports those findings. Schwarting v. Nebraska Liq. Cont. Comm., 271 Neb. 346, 711 N.W.2d 556 (2006).
Interpretation of the language of a trust is a matter of law. Smith v. Smith, 246 Neb. 193, 517 N.W.2d 394 (1994). Regarding matters of law, an appellate court has an obligation to reach a conclusion independent of that of the trial court in a judgment under review. Id.

ANALYSIS

Impact of Fourth, Fifth, and Seventh Codicils on Appellant's Present Interest in Distribution of Trust Income and Principal.
Appellant asserts that the county court erred in finding that the fourth, fifth, and seventh codicils eliminated Appellant's right to succeed to a present interest in the distribution of trust income and principal upon the death of his father. The rules of construction for interpreting a trust are applied when the language of the trust is not clear; but if the language clearly expresses the settlor's intent, the rules do not apply. In re Wendland-Reiner Trust, 267 Neb. 696, 677 N.W.2d. 117 (2004). The primary rule of construction for trusts is that a court must, if possible, ascertain the intention of the testator or creator. Id.; Smith v. Smith, supra. When there are two or more instruments relating to a trust, they should be construed together to carry out the settlor's intent. In re Wendland-Reiner Trust, supra. Thus, we must first determine whether the language of the trusts and Testators' intent is unclear with respect to the present interest of Appellant and his sister, such that the rules of construction for interpreting the trusts apply.
The last wills state, in relevant part:

III.
All of the rest, residue and remainder of my estate I give, devise and bequeath to Carl Odman Alexis, John F. Molloy and Marjorie Alexis Todd, as trustees for the beneficiaries herein designated, for the following uses and purposes, and subject to the following terms and conditions:
(A) Beneficiaries of the trust. The beneficiaries of this trust shall consist of *521 the following persons or classes of persons:
(1) During the balance of her lifetime, my wife, Marjorie E. Alexis, shall be a beneficiary of the trust. In making distribution of income or principal from the trust, it is my desire that the trustees first ascertain and consider that my wife is adequately provided for during her life time. Upon her death, all interest of my wife in this trust shall terminate.
(2) My children, Carl Odman Alexis of Bethesda, Maryland, Josephine Alexis Molloy of Tu[cs]on, Arizona, Marjorie Alexis Todd of Kansas City, Missouri, and Hilbert Verne Joseph Alexis, also known as Joseph Alexis, of Lincoln, Nebraska, are beneficiaries of this trust. It is my desire that my children shall share equally in my estate, but I recognize that circumstances may arise which would justify an unequal distribution of income or principal of the trust, and for that reason I desire that the proportion of income or principal of the trust allocated to my children or distributed to them for their care, support, comfort, well being and education be determined solely by the trustees in the exercise of their sound discretion in the light of the facts and circumstances then existing.
(3) Upon the death of any of my children, the issue of such deceased child shall succeed to his or her interest in the trust, by right of representation. It is my intention that the word "issue" shall include adopted children. Subject to the right of the trustees to encroach upon the principal of the trust and to allocate principal and income distributions in the manner provided for in this will, I desire that the principal of the trust shall ultimately vest in equal shares per capita in my grandchildren, or their issue, by right of representation. The word "grandchildren" as used in this will shall include adopted children of any child of mine.
(B) Dispositive provisions. The trustees shall hold, manage, invest and reinvest the trust property, shall collect and receive the income thereof and after deducting all necessary expenses incident to the administration of the trust, shall dispose of the principal and income of the trust as follows:
(1) During the life of my wife, Marjorie E. Alexis, the trustees shall first provide for the needs and enjoyment of my wife, Marjorie E. Alexis, and to that end shall pay the net income from the trust and if necessary, the principal of the trust to her or shall use the same in her behalf at such times and in such amounts as the trustees, in their sole discretion determine, to be necessary or advisable. During said period the trustees shall also have the right to pay all or any portion of the net income and, if necessary, the principal of the trust to any other beneficiary or beneficiaries of the trust at such times and in such amounts as the trustees shall determine to be advisable if, in the sole discretion of the trustees, the needs and enjoyment of my wife, Marjorie E. Alexis, have been adequately provided for from the trust or from her own property or from any other source.
(2) After the death of my wife, Marjorie E. Alexis, the trustees shall pay the net income and if necessary, the principal from the trust at such times and in such amounts as the trustees, in their sole discretion, deem necessary or advisable for the care, support, comfort, enjoyment, education and well being of my children (Carl Odman Alexis, Josephine Alexis Molloy, Marjorie Alexis Todd and Hilbert Verne Joseph Alexis), and of their issue by right of representation.

*522 (3) After the death of all of my children, the trustees shall distribute the principal and accumulated income of the trust in equal shares per capita to my grandchildren who are living at the time the last survivor of my children shall die. In the event any grandchild of mine shall have died prior to that time and shall have left issue surviving him or her and which issue is surviving at the time of the death of the last survivor of my children, such issue shall succeed to the interest in the trust of such deceased grandchild, by right of representation.
(4) If any such grandchild or his issue by right of representation is under twenty-one (21) years of age at the time of the death of the last survivor of my children, the interest of such grandchild or issue shall be vested, but the trustees shall hold such interest as a separate trust until such grandchild or issue becomes twenty-one (21) years of age when the balance remaining in said trust shall be distributed free from trust to such grandchild or issue.
The fourth codicil to the will states, in relevant part:

I
In my Will of January 4, 1958, I have provided that upon the death of any of my children, the issue of such deceased child shall succeed to his or her interest in the trust therein provided by right of representation. This provision is herewith reaffirmed except for the two issue of my son, Carl Odman Alexis, that is, Carl Erik Alexis and Karin May Alexis, who shall not succeed to his and her interest in the trustwhich interest in the trust shall, nevertheless, vest on the death of their fatheruntil the death of their mother, Maybritt Alexis, who is now divorced from Carl Odman Alexis, and until the death of Maybritt Alexis, all of Carl Erik Alexis' and Karin Alexis' interest in the trust property shall be held, managed, invested or reinvested by the Trustees as a separate trust.

II
Except to the extent as I have herein expressly provided to the contrary, I hereby ratify and confirm all of the provisions and terms of my Will of January 4, 1958, as modified by the second codicil to the Will, and as modified by the third codicil to the Will, and as modified by this codicil to said Will, and I declare said Will as so modified by said codicil to my Last Will.
There is no dispute that the last wills established Testators' intent that the grandchildren succeed to a present interest in the distribution of trust income and principal upon the deaths of their respective parents. The parties also apparently agree, as do we, that the fourth codicil (1) delayed Appellant's and his sister's succession to the interest of their father until the death of their father and their mother and (2) created a separate trust to hold trust distributions made with respect to Appellant's and his sister's present interest until the death of their mother. The parties disagree regarding the interpretation of the fifth and seventh codicils.
In relevant part, the fifth codicil states:

I
In my Will of January 4, 1958, the beneficiaries of the trust are set out therein, and this entire provision is herewith reaffirmed except for my son, Carl Odman Alexis, who shall not be a beneficiary of said trust in that he has already been adequately provided for by me, and I expressly revoke his designation as a beneficiary of any trust established under my Will; however, his two children *523 specified in the fourth Codicil dated November 30, 1962, shall succeed per capita with issue of my other three children to his or her interest in the trust after the demise of my daughter, Josephine Alexis Molloy, my daughter, Marjorie Alexis Todd, and my son, Hilbert Verne Joseph Alexis, also known as Joseph Alexis.
....
III
Except to the extent that I have herein expressly provided to the contrary, I hereby ratify and confirm all of the provisions and terms of my Will as modified by Codicils, and I declare said Will as so modified to be my Last Will.
The seventh codicil to the will states, in relevant part:
I.
I hereby expressly revoke that portion of Paragraph I of the fifth Codicil to my Will quoted as follows: "In my Will of January 4, 1958, the beneficiaries of the trust are set out therein, and this entire provision is herewith reaffirmed except for my son, Carl Odman Alexis, who shall not be a beneficiary of said trust in that he has already been adequately provided for by me, and I expressly revoke his designation as a beneficiary of any trust established under my Will;" and I now will and direct that my son, Carl Odman Alexis, shall be and become a beneficiary of the trust set out in Paragraph III(A) of my original Last Will and Testament of January 4, 1958, it being my intention that he shall have the same status as a beneficiary of said trust as my other children named therein, and that the provisions contained in Paragraph III(A) of my said Will shall stand as originally executed on January 4, 1958, insofar as my said son, Carl Odman Alexis, is concerned, and that he shall be restored to the same status as originally provided in Paragraph III(A) of my said Last Will and Testament of January 4, 1958.
II.
Except to the extent that I have herein expressly provided to the contrary, I hereby ratify and confirm all of the provisions and terms of my Will, as modified by Codicils, and I declare said Will, so modified, to be my Last Will and Testament.
Without question, the fifth codicil revoked Carl Odman Alexis' interest in the trust, and the seventh codicil reinstated that interest. In revoking Carl Odman Alexis' interest, the fifth codicil also revoked Appellant's and his sister's right to succeed to their father's interest, as there was none. See In re Estate of Tjaden, 225 Neb. 19, 402 N.W.2d 288 (1987) ("by right of representation" means devisee is entitled to take or receive share of estate on per stirpes basis; distribution per stirpes is one in which beneficiaries take proportionate shares of share of ancestor through whom they claim as his or her representatives, and as such representatives, they will be entitled to take just as much as such ancestor would have taken and no more).
However, because the status of Appellant's and his sister's present interest following the seventh codicil, which reinstated their father's interest, is not explicitly stated, the codicils are not clear, and we must apply the rules of construction. We must, if possible, ascertain the intention of Testators. See, In re Wendland-Reiner Trust, 267 Neb. 696, 677 N.W.2d 117 (2004); Smith v. Smith, 246 Neb. 193, 517 N.W.2d 394 (1994).
*524 When the fifth codicil revoked the interest of Appellant and his sister's father, there was no longer anything to fund the separate trust established by the fourth codicil, because the source of the separate trust was their father's interest; however, when the seventh codicil reinstated the interest of their father income to fund the separate trust provided for in the fourth codicil would be available.
By operation of the seventh codicil, Carl Odman Alexis was a lifetime beneficiary of the trusts as though he had never been removed, the fifth and seventh codicils having effectively canceled each other out. As noted, there is no express language affecting Appellant's and his sister's present interest or their right to succeed to the present interest. The seventh codicil does, however, state that "the provisions contained in Paragraph III(A) of my said Will shall stand as originally executed." That paragraph provides, in part:
(3) Upon the death of any of my children, the issue of such deceased child shall succeed to his or her interest in the trust, by right of representation.... Subject to the right of the trustees to encroach upon the principal of the trust and to allocate principal and income distributions in the manner provided for in this will, I desire that the principal of the trust shall ultimately vest in equal shares per capita in my grandchildren, or their issue, by right of representation.
Consequently, in the seventh codicil, Testators restated by reference their intent that their grandchildren would succeed to a present interest in the distribution of trust income and principal upon the deaths of their respective parents. In Appellant's and his sister's case, that right was limited by the provisions of the fourth codicil. Had Testators died after executing the fifth codicil but before executing the seventh codicil, Appellant's and his sister's interest would have been eliminated. However, in reinstating Carl Odman Alexis' interest, Testators demonstrated their intention to also reinstate Appellant's and his sister's interest.
Therefore, we conclude that absent express language in the fifth and seventh codicils affecting Appellant's and his sister's present interest and in light of Testators' apparent intent, after the seventh codicil, Appellant and his sister were entitled to succeed to their present interest, subject to the limitations in the fourth codicil and the trustees' right to encroach upon the principal of the trust, while the trusts remained in effect.
Impact of Ninth Codicil on Grandchildren's Interest.
Appellant contends that the county court erred in finding that the ninth codicil changed the rights of all of Testators' grandchildren such that the grandchildren are only entitled to a remainder interest.
The ninth codicil states, in relevant part:

I.
I reaffirmthe [sic] broad discretion given to the Trustees to act freely under all or any of the powers given to them in this Will, but I do direct that in the administration of the trust that the distribution of principal and income be primarily for the benefit of my wife, Marjorie, during her lifetime, and my children, Carl, Josephine, Marjorie and Joseph H. during their lifetime, and that final distribution of the remaining principal to my grandchildren is solely for the purpose of the dissolution of the trust.
Also, in knowledge of thefact [sic] that existing provisions of my Will permit special consideration for the beneficiaries of this Trust as the circumstances may appear, I direct that the Trustees take such appropriate action in the distribution *525 [sic] of income and/or principal to my daughter, Josephine, so that said income or principal may not be diverted from the beneficiaries of this Will to strangers.
Except to the extent that I have herein expressly provided to the contrary, I hereby ratify and confirm all of the provisions and terms of my last Will and Testament as modified by all of the Codicils thereto, and I declare said Will as so modified to be my Last Will and Testament.
The ninth codicil expressly directs the trustees to take action regarding distributions to Josephine Alexis Molloy to avoid any distributions being diverted to strangers. It is the language of the first paragraph that requires construction. See In re Wendland-Reiner Trust, 267 Neb. 696, 677 N.W.2d 117 (2004) (rules of construction for interpreting trust are applied when language of trust is not clear).
In the first paragraph of the ninth codicil, Testators reaffirm the trustees' broad discretion to act as provided in the last wills. That reaffirmation is followed by the words "but I do direct" and a reiteration of the last wills' statements that the trust be administered primarily for the benefit of the surviving spouse and the children, as well as the direction that "final distribution of the remaining principal to my grandchildren is solely for the purpose of the dissolution of the trust." This quoted language is a reiteration of the last wilts' provisions at paragraph III(A)(3) that the principal of the trust will ultimately vest in equal shares per capita in the grandchildren.
Typically, the word "but" signifies "except for the fact," "unless," or "notwithstanding." See Merriam-Webster's Collegiate Dictionary 155 (10th ed.2001). However, in this instance, it is followed by reiterations of existing provisions, none of which contradict the words preceding "but." Whatever the typical meaning of the word, in this context, it cannot signal a contradiction or limitation of the last wills' provisions from paragraph III(A)(3) that were reiterated. Moreover, clear and unambiguous provisions of the original will cannot be controlled by a subsequent codicil, the terms of which are confusing and ambiguous. See In re Estate of Florey, 212 Neb. 665, 325 N.W.2d 643 (1982). The intention of the testator is to be ascertained from a liberal interpretation and comprehensive view of all of the provisions of the will, and we must base our interpretation upon the literal and grammatical meaning of the words and phrases as they appear in the will itself and take into account all the provisions set forth in the will. Id.
The interpretation of codicils has been further explained as follows:
Although the execution of a codicil usually denotes a change in the disposition of the estate, it is not infrequent that codicils are merely explanatory, made for the purpose of clarifying or making plain some provision of the will, and hence a codicil will be interpreted in the light of the general scheme of the will and not in isolation, and as far as is possible and practicable, the provisions of the will and codicil should be reconciled as one consistent whole, giving effect to every part.
However, where the will and codicil are so conflicting or repugnant as to make them irreconcilable, the codicil will prevail, especially where the testator so provides, it being the last expression, but the codicil supersedes the will only to the extent of those provisions of the will that are inconsistent or in conflict with it, and the provisions of the will should not be disturbed further than is necessary to give effect to the codicil.... *526 While the codicil will prevail where there is an irreconcilable conflict between it and the will, this rule will not be applied so as to effect an alteration, unless such an intention on the part of the testator is clearly and unequivocally expressed in the codicil. Where the testator specifies how his or her will as altered by a codicil is to read, the court must construe the two together as he or she directs.
While the clear and definite language of a will should prevail over an obscure codicil, and a doubtful expression in a codicil will not alter a plain provision of the will, where the testator's purpose is clear, the court cannot restrict the codicil by any rule of construction to a meaning which would frustrate its intendment.
96 C.J.S. Wills § 879 at 296-99 (2001).
As we have already observed, the ninth codicil was not clearly contradictory to the last wills. In the absence of a clear intent to alter the last wills except with respect to Josephine Alexis Molloy, we conclude that the ninth codicil did not affect the grandchildren's present interest as set forth in the last wills, subject to the trustees' discretion.

Trustees' Discretion.
Finally, Appellant contends that the county court erred in finding that it was not proper to review the extent of the trustees' discretion and in not determining that the extent of the trustees' discretion was limited.
We note that, with certain exceptions, the Nebraska Uniform Trust Code (NUTC), Neb.Rev.Stat. § 30-3801 et seq. (Cum.Supp.2006), applies to all trusts created before, on, or after January 1, 2005, and to all judicial proceedings concerning trusts commenced on or after January 1, 2005. § 30-38, 110. Therefore, generally, the NUTC applies to the trusts and proceedings at issue.
While a specific provision of the NUTC does not apply because of an exception, a general provision affecting the nature of a trustee's discretion does affect our analysis. Section 30-3879(b)(l), which requires certain trustees who are also beneficiaries to make certain discretionary distributions only in accordance with an ascertainable standard, does not apply in this case. See § 30-38, 110(d) (§ 30-3879(b)(1) applies only to trusts which become irrevocable on or after January 1, 2005). However, § 30-3879(a) does apply to the instant case, and requires that
[n]otwithstanding the breadth of discretion granted to a trustee in the terms of the trust, including the use of such terms as "absolute", "sole", or "uncontrolled", the trustee shall exercise a discretionary power in good faith and in accordance with the terms and purposes of the trust and the interests of the beneficiaries.
Thus, the trustees in the case before us are bound to exercise their discretionary powers in good faith and in accordance with the terms and purposes of the trust and the interests of the beneficiaries. Further, § 30-3849(d) states that § 30-3849, which imposes limitations on the right of the creditor of a beneficiary to compel a distribution, "does not limit the right of a beneficiary to maintain a judicial proceeding against a trustee for an abuse of discretion or failure to comply with a standard for distribution."
The NUTC also authorizes a procedural method for court review of a beneficiary's substantive claim. Section 30-3812 provides:
(a) The court may intervene in the administration of a trust to the extent its *527 jurisdiction is invoked by an interested person or as provided by law.
....
(c) A judicial proceeding involving a trust may relate to any matter involving the trust's administration, including a request for instructions and an action to declare rights.
The language of § 30-3812 is identical to that of Unit Trust Code § 201, 7C U.L.A. 455 (2006). This court has previously considered the comments to the Uniform Trust Code in interpreting the NUTC. See In re Charles C. Wells Revocable Trust, 15 Neb.App. 624, 734 N.W.2d 323 (2007). The comment to § 201 states, in relevant part:
Subsection (c) makes clear that the court's jurisdiction may be invoked even absent an actual dispute. Traditionally, courts in equity have heard petitions for instructions and have issued declaratory judgments if there is a reasonable doubt as to the extent of the trustee's powers or duties. The court will not ordinarily instruct trustees on how to exercise discretion, however.
7C U.L.A. at 455. The comment to § 201 allows, but does not require, invocation of the court's jurisdiction absent an actual dispute.
In In re Trust Created by Hansen, 274 Neb. 199, 739 N.W.2d 170 (2007), the Nebraska Supreme Court observed that § 30-3812 does not limit to trustees the right to seek instructions from the court. The court also noted that Nebraska's declaratory judgment statutes allow trustees and persons interested in the administration of a trust to seek a declaration regarding any question arising in the administration of a trust. In re Trust Created by Hansen, supra.
In In re Estate of Tizzard, 14 Neb.App. 326, 335, 708 N.W.2d 277, 285 (2005), we stated the law applicable to obtaining a declaratory judgment:
In order to grant declaratory relief, there must be a justiciable issue, meaning a present, substantial controversy between parties having adverse legal interests susceptible to immediate resolution and capable of present judicial enforcement.... "While not a constitutional prerequisite for jurisdiction of courts of the State of Nebraska (cf. U.S. Const. art. III, § 2), existence of an actual case or controversy, nevertheless, is necessary for the exercise of judicial power in Nebraska." ... The Nebraska Supreme Court has said numerous times that it can declare the law and its application to a given set of facts only when a justiciable controversy is presented for determination and that it is not empowered to render advisory opinions.
(Citations omitted.) Thus, as a general rule, there must be an actual case or controversy for a party to obtain a declaratory judgment.
There is no dispute that there was an actual controversy concerning the beneficial interest of Appellant and his sister in light of the fact that their father, Carl Odman Alexis, was deceased. We have concluded above that Appellant's and his sister's present interest was reinstated by the seventh codicil and that the ninth codicil did not extinguish the grandchildren's present interest; and an additional actual controversy naturally arises from our conclusion: whether the trustees, in excluding Appellant and his sister, have been appropriately distributing proceeds from the sale of trust property. The county court, having concluded that Appellant's and his sister's interest was terminated, did not have this controversy before it. That is, because the county court found that Appellant and his sister were not entitled to *528 succeed to their father's interest, there was no need to interpret the extent of the trustees' discretion. However, in light of our analysis above, a controversy exists regarding that discretion. Therefore, the county court is obligated to make that determination, and we direct the county court to determine the extent of the trustees' discretion on remand. See Galyen v. Balka, 253 Neb. 270, 570 N.W.2d 519 (1997) (court decides real controversies and determines rights actually controverted).
Appellant's final assignment of error is that the county court erred in not determining that the extent of the trustees' discretion was limited. Although we have concluded that the county court is obligated to determine the extent of the trustees' discretion, because the county court is in the best position to determine the extent of that discretion, we will not consider that issue and direct the county court to address it on remand.

CONCLUSION
For the foregoing reasons, we conclude that the county court misinterpreted the last wills and codicils and is obligated to determine the extent of the trustees' discretion. Accordingly, we reverse, and remand with directions to enter an order in accordance with this opinion.
REVERSED AND REMANDED WITH DIRECTIONS.