784 N.W.2d 110 (2010)
280 Neb. 89
In re FAMILY TRUST CREATED UNDER the Andrez P. AKERLUND TRUST OF JANUARY 6, 1974.
U.S. Bank, N.A., Trustee, appellee,
v.
Fritz Akerlund, appellant, and
Ellen Akerlund Gonella, appellee.
No. S-09-671.
Supreme Court of Nebraska.
June 25, 2010.
*111 Thomas B. Thomsen, of Sidner, Svoboda, Schilke, Thomsen, Holtorf, Boggy, Nick & Placek, Fremont, for appellant.
Donald R. Witt, Christina L. Ball, and Julie M. Karavas, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., Lincoln, for appellee Ellen Akerlund Gonella.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
*112 WRIGHT, J.

NATURE OF CASE
U.S. Bank, N.A., the trustee of the family trust created under the Andrez P. Akerlund Trust of January 6, 1974, sought instruction from the Douglas County Court to determine how the assets of the family trust should be distributed. The court ordered the assets of the family trust divided and distributed equally between Fritz Akerlund and Ellen Akerlund Gonella (Ellen). Fritz appeals, and we affirm.

SCOPE OF REVIEW
Appeals involving the administration of a trust are equity matters and are reviewable in an appellate court de novo on the record. In re Estate of Hedke, 278 Neb. 727, 775 N.W.2d 13 (2009). In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions concerning the matters at issue. Id.

FACTS
On January 6, 1974, Andrez P. Akerlund signed a trust agreement consisting of two parts: a marital trust and a family trust. Upon Andrez' death, the trustee was directed to place half of Andrez' gross estate, as established by the Internal Revenue Service, in the marital trust for the benefit of his wife, Frances J. Akerlund. The remainder of the assets of Andrez' estate was to be placed in the family trust. The income from both trusts was to be paid to Frances during her lifetime, subject to the provision that in the event she remarried, the income from the family trust would then be divided equally between Andrez' children, Fritz and Ellen.
Frances had full power to distribute the assets in the marital trust either by power of appointment or by will. Upon Frances' death, the assets of the family trust and any assets remaining in the marital trust that had not previously been distributed by Frances were to be distributed pursuant to paragraph II(4)(a) and (b) of the trust agreement:
a. One-half of this trust shall, if possible, be held in trust for ... Fritz ... in a separate trust. In establishing the trust I request that the following real estate be placed in [Fritz'] trust: The East Half of the Southeast Quarter of Section 10; the Northwest Quarter[ ] of Section 11 ... except 2.3 acres deeded to the State; the South Half of Section 11, all in Township 16, Range 9, Douglas County, Nebraska. In connection with this direction as to the real estate, any supporting personal property including insurance pertaining to this real estate shall be allot[t]ed to [Fritz'] trust.
b. The remaining assets shall be allocated to [Ellen's] trust.
Paragraph II(9) directed the trustee to hold, manage, administer, and control the assets of the trusts in accordance with the following terms and provisions:
a. A substantial portion of my assets are involved in farm properties which are being operated by Willard Wedberg. I direct that insofar as may be possible, the trustees shall continue the arrangement with Willard in connection with the operation of these properties. In the event of Willard's death or disability, I direct that insofar as is possible, the Trustees continue to operate these farm units so as to retain them in the family. Upon termination of the trust, I request that the beneficiaries insofar as possible continue to operate these as a unit. In that connection, I have directed that certain farms be placed in the trust for eventual distribution to [Fritz] and I wish that [Fritz] and his children continue to operate and conduct the farming *113 operations as long as is feasible, since these farms have been in the family for many years and I hope that they can so remain.
Andrez died on May 6, 1978. At that time, the federal estate tax return filed in his estate showed a total gross estate of $1,527,937.55, and an adjusted gross estate of $1,430,208.32. The Douglas County farm referenced in paragraph II(4)(a) of the family trust consisted of 557.7 acres and was appraised at $840,780. The trustee distributed all of the nonfarm property and an undivided 26.43-percent interest in the farm to the marital trust.
Frances died on April 2, 2008. Prior to her death, she distributed the remaining assets of the marital trust equally between Fritz and Ellen, including the 26.43-percent interest in the farm. Therefore, Fritz and Ellen each have approximately a 13-percent interest in the farm.
The assets held in the family trust upon Frances' death consisted of an undivided 73.57-percent interest in the farm and securities and other liquid investments with an approximate market value of $117,981. The parties estimated that the farm had a value of approximately $5,000 per acre. Currently, Fritz and Ellen reside in California, and neither has participated in the management or operation of the farm.
On August 7, 2008, the trustee of the family trust filed a "Petition for Instruction and Declaration of Rights Under Nebraska Uniform Trust Code Section 30-3812." The trustee stated it did not know how to distribute the assets in the family trust between Fritz and Ellen because certain provisions of the trust agreement stated that half of the trust "`shall'" be allocated to Fritz and other provisions of the trust agreement "`request'" and "`direct'" that the farm be placed in trust for Fritz. The trustee noted that it was impossible to comply with all of the provisions, because the Farm constituted more than half the value of the assets in the family trust.
Ellen argued that the farm and the remaining assets should be divided equally between her and Fritz. Fritz argued that he should receive the entire farm and that Ellen should receive the remaining assets, which amounted to approximately $117,000.
At trial, the affidavit of the vice president and trust officer for the trustee was offered and received into evidence as were a copy of the trust agreement and form 706, the "United States Estate Tax Return." The oral stipulation of the parties was placed on the record, and the court took the matter under advisement.
The court issued its order on June 10, 2009, finding that
the assets of the Family Trust created under the Andrez P. Akerlund Trust of January 6, 1974, should be divided and distributed as follows:
1. An undivided one-half interest in the farm property to Fritz ... and an undivided one-half interest in the farm property to Ellen ... and;
2. An undivided one-half interest in all other remaining assets of the Family Trust to Fritz ... and an undivided one-half interest in all other remaining assets of the Family Trust to Ellen....

ASSIGNMENT OF ERROR
Fritz claims, summarized and restated, that the court erred in distributing half the family trust to Fritz and the other half to Ellen instead of distributing the entire farm to Fritz and the remaining assets to Ellen.

*114 ANALYSIS
Fritz claims that it was Andrez' intention to give him the entire farm even if the value of the farm exceeded half the value of the family trust. Ellen claims that Andrez intended to treat both children equally and that he expressed a preference to fund Fritz' half with the farm, if possible.
The primary rule of construction for trusts is that a court must, if possible, ascertain the intention of the testator or creator. In re Wendland-Reiner Trust, 267 Neb. 696, 677 N.W.2d 117 (2004). The interpretation of the words of a trust is a question of law. In re Estate of West, 252 Neb. 166, 560 N.W.2d 810 (1997). Appeals involving the administration of a trust are equity matters and are reviewable in an appellate court de novo on the record. In re Estate of Hedke, 278 Neb. 727, 775 N.W.2d 13 (2009). In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions concerning the matters at issue. Id. In interpreting a trust, the entire instrument, all its parts, and its general purpose and scope are to be considered; no parts are to be disregarded as meaningless if any meaning can be given them consistent with the rest of the instrument. Smith v. Smith, 246 Neb. 193, 517 N.W.2d 394 (1994).
Andrez' trust agreement provides for two separate trusts. Paragraph I(1) states:
Upon the death of [Andrez] there shall be placed in the marital trust ... property which has a value equal to ½ of [Andrez'] gross estate ... less the value of any other property which ... Frances... might have received because of his death, which has been included in [Andrez'] gross estate.
Paragraph II(1) provides: "Upon the death of [Andrez] there will be placed in the family trust the remainder of the assets of [Andrez'] estate less that placed in the marital trust and that used for taxes, claims, and expenses."
Paragraph II(4) of the trust agreement provides that upon the death of Frances,
the trustees shall hold the assets of this family trust and any unappointed assets received from the marital trust ...:
a. One-half of this trust shall, if possible, be held in trust for ... Fritz ... in a separate trust....
b. The remaining assets shall be allocated to [Ellen's] trust.
....
d. The principal and any undistributed income shall be distributed to each individual beneficiary as follows:
(1) As each child reaches the age of 35 ... one-third of the trust to him or her.
(2) When said child shall attain the age of 40 ... one-half of the then remainder of that child's trust to him or her.
(3) When said child shall attain the age of 45, that child's trust shall terminate and the remainder of his or her share thereof shall be transferred to him or her.
e. If ... the Trustee ... shall determine that such child is in need of funds... the Trustee may pay to such child... portions of the principal ... as the Trustee ... shall deem necessary or advisable.
Fritz argues that regardless of the value of the farm, he should receive the entire farm because it is simply not possible for him to receive the entire farm and to receive only half of the family trust. He claims this is the only interpretation that would give meaning to the words "if possible" *115 because it would always be possible for him to receive half of the trust. He argues that interpreting the language of the trust to mean that he receives only half of the trust renders the words "if possible" superfluous and meaningless, in violation of the rules of construction for trusts. He claims his position is further supported by paragraph II(4)(b), which instructs that Ellen is to receive the remaining assets of the trust rather than specifying that she is to receive the other half of the trust assets.
Ellen argues that other provisions of the trust indicate Andrez' intent. She notes that in the event Frances remarried, the income from the marital trust was to be divided equally between Fritz and Ellen. Ellen argues that Andrez did not intend for Fritz to receive the entire farm in the event that it made up more than half of the value of the family trust, and she interprets the words "if possible" to mean that Fritz' share of the trust was to be funded with the farm to the extent possible.
Our examination of the trust instrument and the federal estate tax return leads us to conclude that Andrez intended to divide his estate into two separate trusts. The first was the marital trust, in which he placed half of his gross estate as established by the Internal Revenue Service less any value of other property that Frances might have received because of his death that was included in his gross estate. The division was to be made giving full consideration to changes in the value of these assets such as would permit the division to conform to all requirements of the Internal Revenue Code.
The second trustthe family trustwas to consist of the remainder of the assets of Andrez' estate less those placed in the marital trust and used for taxes, claims, and expenses. Half of the family trust was to be held in trust for Fritz, and the remainder was to be allocated to Ellen. This is the same language by which Andrez placed half of his gross estate in the marital trust and the remainder of the assets in the family trust. Furthermore, if Fritz was to receive the entire farm, there would be no remaining assets to be allocated to Ellen as part of the family trust. Such an interpretation would render many of the provisions of paragraph II(4)(b) through (4)(e) meaningless because there would be no assets in the family trust except the farm.
The federal estate tax return filed after Andrez' death lists the value of the farm at $840,780, which is greater than half the total gross estate of $1,527,937. The gross estate reduced by the funeral expenses and expenses incurred in administering the property and Andrez' debts left an adjusted gross estate of $1,430,208. The tax return shows that the marital deduction was $715,104. Because the value of the farm was $840,780more than half of the gross estate26.43 percent of the farm was conveyed to the marital trust. Thus, it was not possible to allocate half the assets of the gross estate to the marital trust without including part of the farm. Ultimately, 26.43 percent of the farm was reconveyed by Frances to Fritz and Ellen in equal shares. It was not possible to convey the farm to Fritz as half of the family trust.
Upon Frances' death, the assets of the family trust consisted of 73.57 percent of the farm and $117,981 in securities and other liquid assets. The court ordered that an undivided half interest in the farm property be allocated to Fritz and that a half interest in the farm property be allocated to Ellen. It further ordered that an undivided half interest in all the remaining assets of the family trust be allocated to Fritz and Ellen in equal shares. We find *116 no error in this distribution of the property.

CONCLUSION
Andrez' intention was to create two trusts upon his death: the marital trust and the family trust. He also intended to divide the family trust equally between his and Frances' two children, Fritz and Ellen. If possible, Fritz was to receive the farm as his half interest in the family trust. Because the farm exceeded half the value of the gross estate, it was not possible for Fritz to receive the entire farm. The county court did not err in its division of the trust property. The judgment of the county court is affirmed.
AFFIRMED.