Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/11/2018 09:10 AM CDT

IN RE TRUST OF JENNIE SHIRE, DECEASED.
WELLS FARGO BANK, NATIONAL ASSOCIATION,
SUCCESSOR TRUSTEE, APPELLEE, AND SHIRLEY
SMITH GRONIN, BENEFICIARY, APPELLANT,
v. UNKNOWN/UNDISCOVERED HEIRS
ET AL., APPELLEES.

___ N.W.2d ___

Filed February 16, 2018.    No. S-17-263.

1. **Trusts: Equity: Appeal and Error.** Absent an equity question, an appellate court reviews trust administration matters for error appearing on the record; but where an equity question is presented, appellate review of that issue is de novo on the record.
2. **Evidence: Appeal and Error.** In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions on the matters at issue.
3. **Statutes.** Statutory interpretation presents a question of law.
4. **Judgments: Appeal and Error.** An appellate court independently reviews questions of law decided by a lower court.
5. **Statutes.** Absent anything to the contrary, statutory language is to be given its plain meaning, and a court will not look beyond the statute or interpret it when the meaning of its words is plain, direct, and unambiguous.
6. **Legislature: Statutes.** When the Legislature provides a direct reference to a section of a uniform law code when adopting that code, it incorporates the comments explaining that section.
7. **Trusts: Proof.** Under Neb. Rev. Stat. § 30-3837(b) (Reissue 2016), the party seeking a modification of a trust must affirmatively demonstrate that all beneficiaries have consented to the modification.
8. **Statutes: Legislature: Intent.** Components of a series or collection of statutes pertaining to a certain subject matter are in pari materia and should be conjunctively considered and construed to determine the

intent of the Legislature, so that different provisions are consistent, harmonious, and sensible.

9. **Trusts.** Under Neb. Rev. Stat. § 30-3837(b) (Reissue 2016), the issue of consent for unknown beneficiaries is governed by Neb. Rev. Stat. §§ 30-3825 and 30-3826 (Reissue 2016).

10. **Trusts: Intent.** At common law, a trust can be modified upon the consent of the settlor and all the beneficiaries, regardless of whether the purpose of the trust is satisfied, or upon the consent of all beneficiaries if not inconsistent with the trust's purpose.

11. **Statutes: Legislature: Intent: Appeal and Error.** In construing a statute, an appellate court should consider the statute's plain meaning in pari materia and from its language as a whole to determine the intent of the Legislature.

12. **Statutes: Intent.** The construction of a statute which restricts or removes a common-law right should not be adopted unless the plain words of the statute compel it.

13. **Trusts: Courts: Intent.** Under Neb. Rev. Stat. § 30-3837(e) (Reissue 2016), for the interests of nonconsenting beneficiaries to be adequately protected, the court must determine that modification will not affect those interests and impose safeguards to prevent them from being affected, when deemed necessary.

14. **Appeal and Error.** An issue not presented to or decided by the trial court is not appropriate for consideration on appeal.

Appeal from the County Court for Lancaster County: Holly J. Parsley, Judge. Affirmed.

Daniel E. Klaus, of Rembolt Ludtke, L.L.P., for appellant.

John C. Hurd and Krista M. Carlson, of Wolfe, Snowden, Hurd, Luers & Ahl, L.L.P., for appellee Wells Fargo Bank.

Chris Blomenberg, of McHenry, Haszard, Roth, Hupp, Burkholder & Blomenberg, P.C., L.L.O., for appellees Unknown/Undiscovered Heirs.

J.L. Spray, of Mattson Ricketts Law Firm, for appellees Robert Banner et al.

Heavican, C.J., Cassel, Stacy, Kelch, and Funke, JJ.

FUNKE, J.

This appeal concerns a petition for trust proceeding, filed by the trustee, Wells Fargo Bank (Wells Fargo), to provide increased disbursements from the trust of Jennie Shire (Trust) to the remaining lifetime beneficiary, Shirley Smith Gronin. The county court for Lancaster County ruled that a modification of the terms of the Trust was not authorized by the Nebraska Uniform Trust Code.[1] We affirm.

## BACKGROUND

The Trust was created by the last will and testament of Shire, executed on September 10, 1947. Paragraph IV of Shire's will provided that the Trust would be funded with $125,000 and that the trustees would pay $500 monthly to Shire's daughter, Ruth Banner Gronin (Ruth), during her life and to Shire's granddaughter, Gronin, upon Ruth's death and Gronin's attaining the age of 25 years. Further, paragraph IV states: "Upon the death of the survivor of [Ruth and Gronin], the balance of the trust fund (including any addition from Paragraph V) shall be added to the residue of my estate and be distributed, as provided in Paragraph VI."

Gronin was born in 1945. Shire died in 1948. After Ruth passed away in 1983, the monthly $500 payments from the Trust were made to Gronin.

At the time of trial, Gronin was also receiving monthly payments of $564 from Social Security and $88.38 from a casino pension plan. Her total monthly income was $1,152.38. Further, she had two bank accounts, each with a negligible balance. She testified that neither she nor Ruth had ever been able to save any money, because their income never exceeded their living expenses.

A trust officer for Wells Fargo testified that as of September 26, 2016, the Trust had a principal balance of $981,874.58. He further testified that the expected annual return for the

---

[1] Neb. Rev. Stat. § 30-3801 et seq. (Reissue 2016 & Supp. 2017).

Trust, before fees and taxes, ranged from 6.40 percent to 8.10 percent. Consequently, the Trust could expect income and appreciation to be between approximately $64,000 and $81,000 annually. Evidence was also adduced that based on the rate of inflation, the present value of a $500 payment in 1948 would be either $4,997 or $5,400.29 today.

Before filing the petition, Wells Fargo attempted to identify potential heirs of the beneficiaries identified in paragraph VI of Shire's will. In its petition, Wells Fargo specifically identified 12 individuals and entities that may have an interest in the residuary and requested the court to notify them of the proceeding. The petition requested that the court determine the beneficiaries under paragraph VI, which was bifurcated from the present proceeding and set for later consideration.

The following known beneficiaries were present at the hearing on the Trust's modification: six individual beneficiaries participated by counsel, one individual beneficiary participated pro se, and the Nebraska Attorney General's office participated on behalf of charitable beneficiaries. At Wells Fargo's request, the court appointed an attorney to represent the "Unknown/Undiscovered Heirs," if any, of the beneficiaries under paragraph VI of Shire's will (unknown beneficiaries).

After the hearing, the parties had the opportunity to submit posttrial briefs. Counsel for the unknown beneficiaries was the only party that opposed Wells Fargo's motion. Neither the assistant attorney general nor the pro se beneficiary submitted any brief supporting or opposing the modification of the Trust. Counsel for the six beneficiaries submitted a brief which concluded: "On behalf of our clients, we respectfully request the Court enter an Order adjusting the monthly distribution to . . . Gronin consistent with the Trustee's evidence in such a fashion so as to not jeopardize the corpus of the Trust." No other beneficiaries expressed consent or an objection.

In February 2017, the court ruled that the requested modification of the trust was not warranted. Specifically, it ruled that

the plain language of the Trust did not permit an increased distribution; § 30-3837(b) did not authorize a modification, because not all beneficiaries had consented; § 30-3837(e) did not permit a modification, because increasing Gronin's annual payments would have a detrimental effect on the Trust's residue, which would not adequately protect the non-consenting beneficiaries; and § 30-3838 did not allow a modification, because there was not an unanticipated change in circumstances.

Gronin filed a timely appeal. We removed the case to our docket on our own motion pursuant to our authority to regulate the caseloads of the Nebraska Court of Appeals and this court.[2]

### ASSIGNMENTS OF ERROR

Gronin assigns, restated, that the court erred in concluding that modification of the Trust, to provide increased disbursements to her, was not appropriate under § 30-3837(b) and (e) and the doctrine of deviation. Gronin also assigns, restated, that the court erred in concluding that her current living circumstances were not unanticipated by Shire and that the purpose of the Trust did not include providing a reasonable income to Gronin.

### STANDARD OF REVIEW

[1,2] Absent an equity question, an appellate court reviews trust administration matters for error appearing on the record; but where an equity question is presented, appellate review of that issue is de novo on the record.[3] In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions on the matters at issue.[4]

---

[2] See Neb. Rev. Stat. § 24-1106(3) (Supp. 2017).

[3] *In re Estate of Radford*, 297 Neb. 748, 901 N.W.2d 261 (2017).

[4] *Id.*

[3,4] Statutory interpretation presents a question of law.[5] We independently review questions of law decided by a lower court.[6]

## ANALYSIS

### Beneficiaries Did Not Unanimously Consent to Modification

Gronin and Wells Fargo argue that we should interpret § 30-3837(b), requiring the "consent of all of the beneficiaries," to allow a modification when no known beneficiary has objected to the modification after receiving notice of it. Regarding unknown beneficiaries, they argue that—based on the Comments and Recommendations for Enactment of a Nebraska Uniform Trust Code[7]—we should follow Neb. Rev. Stat. §§ 30-24,123 and 30-24,124 (Reissue 2016) of Nebraska's Uniform Probate Code and permit the lack of objection by known beneficiaries with a commonality of interest with unknown beneficiaries to satisfy the statutory requirement. They argue that the objection by the attorney appointed to represent the unknown beneficiaries was only theoretical and should not bar application of this subsection here, because all residuary beneficiaries share a common interest.

The unknown beneficiaries argue that the plain language of § 30-3837(b) requires the consent of all beneficiaries and does not permit a commonality of interest representation for unknown beneficiaries.

Section 30-3837(b) provides, in relevant part, that "[a] noncharitable irrevocable trust may be modified upon consent of all of the beneficiaries if the court concludes that modification is not inconsistent with a material purpose of the trust."

[5,6] Absent anything to the contrary, statutory language is to be given its plain meaning, and a court will not look

---

[5] *Gillpatrick v. Sabatka-Rine*, 297 Neb. 880, 902 N.W.2d 115 (2017).

[6] *Id.*

[7] See, 2002 Neb. Laws, L.R. 367; Comments and Recommendations for Enactment of a Nebraska Uniform Trust Code (2002).

beyond the statute or interpret it when the meaning of its words is plain, direct, and unambiguous.[8] We have held that when the Legislature provides a direct reference to a section of a uniform law code when adopting that code, it incorporates the comments explaining that section.[9]

The Legislature has incorporated the comment to § 411 of the Uniform Trust Code (UTC) to § 30-3837, upon which it was modeled.[10] In the UTC comment to § 411, subsection (b) is described as requiring "unanimous consent," while subsection (e) is described as being the applicable procedure "when the consent of less than all of the beneficiaries is available."[11]

[7] Based on the plain language of § 30-3837(b) and the comment to § 411, the party seeking a modification of a trust must affirmatively demonstrate that all beneficiaries have consented to the modification. Gronin and Wells Fargo's argument that this requirement is satisfied when no known beneficiary has objected after receiving notice of a modification is not supported by either the plain language of the statute or the comment to § 411.

The language of § 30-3837(b), however, is not clear regarding the effect of potential unidentified beneficiaries, who might not even exist, on the consent requirement. But the comment to § 411 provides that "[t]he provisions of Article 3 on representation, virtual representation, and the appointment and approval of representatives appointed by the court apply to the determination of whether all beneficiaries have signified consent under this section."[12]

The Nebraska Uniform Trust Code also contains the provisions of article 3 of the UTC. Section 30-3825 provides:

---

[8] *Hopkins v. Hopkins*, 294 Neb. 417, 883 N.W.2d 363 (2016).

[9] See, e.g., *In re Estate of Fuchs*, 297 Neb. 667, 900 N.W.2d 896 (2017); *Midwest Renewable Energy v. American Engr. Testing*, 296 Neb. 73, 894 N.W.2d 221 (2017).

[10] See § 30-3837.

[11] Unif. Trust Code § 411, 7C U.L.A. 499 (2006).

[12] *Id.*

(UTC 304) Unless otherwise represented, a minor, incapacitated, or unborn individual, or *a person whose identity or location is unknown and not reasonably ascertainable*, may be represented by and bound by another having a substantially identical interest with respect to the particular question or dispute, but only to the extent there is no conflict of interest between the representative and the person represented.

(Emphasis supplied.) Further, § 30-3826 states:

(UTC 305) (a) If the court determines that an interest is not represented under sections 30-3822 to 30-3826, or that the otherwise available representation might be inadequate, the court may appoint a representative to receive notice, give consent, and otherwise represent, bind, and act on behalf of a minor, incapacitated, or unborn individual, *or a person whose identity or location is unknown*. A representative may be appointed to represent several persons or interests.

(b) A representative may act on behalf of the individual represented with respect to any matter arising under the Nebraska Uniform Trust Code, whether or not a judicial proceeding concerning the trust is pending.

(c) In making decisions, a representative may consider general benefit accruing to the living members of the individual's family.

(Emphasis supplied).

[8,9] These provisions comprehensively resolve any consent issues concerning individuals who cannot consent on their own behalf. Components of a series or collection of statutes pertaining to a certain subject matter are in pari materia and should be conjunctively considered and construed to determine the intent of the Legislature, so that different provisions are consistent, harmonious, and sensible.[13] Based on the comment to § 411

---

[13] *County of Webster v. Nebraska Tax Equal. & Rev. Comm.*, 296 Neb. 751, 896 N.W.2d 887 (2017).

and our well-established principle of statutory construction, we must determine the issue of consent for unknown beneficiaries in § 30-3837(b) pursuant to §§ 30-3825 and 30-3826.

While Gronin and Wells Fargo argue that we should rely on a reference contained in the Comments and Recommendations for Enactment of a Nebraska Uniform Trust Code, we have not previously considered whether that source is incorporated into the sections of the Nebraska Uniform Trust Code. The Comments and Recommendations for Enactment of a Nebraska Uniform Trust Code was created as a result of an interim study by the Legislature's Banking, Commerce and Insurance Committee, as required by L.R. 367. Accordingly, we consider the Comments and Recommendations for Enactment of a Nebraska Uniform Trust Code to be legislative history. In further support of this conclusion, we note that unlike the comments to the UTC, the Legislature did not reference the Comments and Recommendations for Enactment of a Nebraska Uniform Trust Code in the text of the sections of the Nebraska Uniform Trust Code.

In order for a court to inquire into a statute's legislative history, the statute in question must be open to construction, and a statute is open to construction when its terms require interpretation or may reasonably be considered ambiguous.[14] Because § 30-3837 is not ambiguous, we do not consider the language of the Comments and Recommendations for Enactment of a Nebraska Uniform Trust Code.

Here, Wells Fargo specifically identified 12 living individuals and entities that were known beneficiaries of the Trust. The record contains a brief filed by six of these individual beneficiaries, which affirmatively consent to the modification therein. The record, however, does not contain any evidence that the other known beneficiaries affirmatively consented to the modification. Therefore, the court did not err in ruling that no modification was warranted under § 30-3837(b).

---

[14] *Doe v. McCoy*, 297 Neb. 321, 899 N.W.2d 899 (2017).

Further, while the court could have allowed any unknown beneficiaries to be represented and bound by the unanimous consent of the known beneficiaries, under § 30-3825, the court instead appointed a separate representative—upon Wells Fargo's motion—with the full authority to act on behalf of any unknown beneficiaries, under § 30-3826. Therefore, the representative's objection to modification was not theoretical and also precludes the application of this section.

## Modification of Trust Would Not Have Adequately Protected Nonconsenting Beneficiaries

Gronin and Wells Fargo contend that § 30-3837(e) applies because the modification was not inconsistent with the purpose of the Trust and it would adequately protect the nonconsenting beneficiaries. Gronin argues that we should interpret the term "'adequate'" to mean sufficient, rather than absolute.[15] Accordingly, an increase that does not affect the principal of a trust would adequately protect the interests of nonconsenting beneficiaries. Further, Gronin and Wells Fargo contend that interpreting the subsection to preclude a modification that only slows the growth of the principal would create an absurd result.

The unknown beneficiaries argue that any increase in distributions to Gronin affects their interest in the future growth of the Trust, even if it does not affect the Trust's principal. They argue that we should interpret the phrase "adequately protected" to impose a high standard when a modification would take money from one beneficiary for the benefit of another.[16]

Subsection (e) of § 30-3837 provides:

> If not all of the beneficiaries consent to a proposed modification or termination of the trust under subsection (a) or (b) of this section, the modification or

---

[15] Brief for appellant at 23.

[16] Brief for appellees unknown beneficiaries at 5.

termination may be approved by the court if the court is satisfied that:

(1) if all of the beneficiaries had consented, the trust could have been modified or terminated under this section; and

(2) the interests of a beneficiary who does not consent will be adequately protected.

In this case, subsection (a) is not applicable because it would require the consent of Shire, who died in 1948.[17] As decided above, subsection (b) is also not applicable because there was not unanimous consent of the beneficiaries. In order to satisfy the second requirement of subsection (e), there must be a showing that the interests of nonconsenting beneficiaries will be adequately protected by a modification—which has not been met.

The comment to § 411 indicates that subsection (e) is "similar to Restatement (Third) of Trusts Section 65 cmt. c (Tentative Draft No. 3, approved 2001), and Restatement (Second) of Trusts Sections 338(2) & 340(2) (1959)."[18]

[10] These sections of the Restatements adopted the common-law principle that a trust can be modified upon the consent of the settlor and all the beneficiaries, regardless of whether the purpose of the trust is satisfied, or upon the consent of all beneficiaries if not inconsistent with the trust's purpose.[19] However, regarding holders of contingent interests that do not consent, the Restatements depart from the common law by permitting a modification that is neither inconsistent with the settlor's intent nor prejudicial to the nonconsenting beneficiaries' interests.[20]

---

[17] See § 30-3837(a).

[18] Unif. Trust Code, *supra* note 11, 7C U.L.A. 501.

[19] See *Hubbard v. Buddemeier*, 328 Ill. 76, 159 N.E. 229 (1927). See, also, *Commissioner of Internal Revenue v. Bacher*, 102 F.2d 500 (6th Cir. 1939); *Smith v. Mass. Mutual Life Ins. Co.*, 116 Fla. 390, 156 So. 498 (1934).

[20] See *Hubbard, supra* note 19.

Comment *c.* to § 65 of the Restatement (Third) of Trusts[21] states:

> [I]f the court is satisfied that the best interests of the beneficiaries as a whole would be served by a proposed termination or modification and [the modification would not be inconsistent with the material purpose of the trust], a court may order a partial termination of the trust (or other arrangement that might involve bonding, insurance, or impounding of some trust property) in a manner that will not prejudice the interests of nonconsenting beneficiaries.

The referenced sections of the Restatement (Second) of Trusts also both require that nonconsenting beneficiaries are "not prejudiced" by a modification.[22] The comments to these sections indicate that absent unanimous consent, modification is permitted only if it does not impact nonconsenting beneficiaries.[23] This is evidenced by the following illustration to § 340:

> 8. A transfers land to B in trust to pay the rents and profits to C for life and upon C's death to convey the land to D. If D does not consent or is under an incapacity, C cannot insist that B convey to him a legal life estate.[24]

That section of the Restatement provides an additional relevant illustration:

> 11. A transfers securities worth $200,000 to B in trust to pay each of several persons an annuity for life and subject to such payments in trust for C. All of the annuitants die except D who is entitled to an annuity of $500. The court may order B to transfer to C a part of

---

[21] Restatement (Third) of Trusts § 65, comment *c.* at 476 (2003).

[22] Restatement (Second) of Trusts § 338(2) at 167 (1959). Accord *id.*, § 340(2).

[23] *Id.*, § 338, comment *h.*

[24] *Id.*, § 340, comment *g.*, illustration 8 at 175.

the securities, B retaining enough to constitute ample
security for the payment of D's annuity.[25]

Accordingly, in departing from the common law to per-
mit modification without unanimous consent, the Restatements
have steadfastly protected the rights of nonconsenting ben-
eficiaries. For, even in instances where prejudice to a non-
consenting beneficiary are not foreseeable, a court maintains
authority to safeguard those beneficiaries from prejudice by
requiring, for example, bonding or insurance. As evidenced by
the illustrations, the exception to unanimous consent is narrow
in scope.

[11] In construing a statute, an appellate court should con-
sider the statute's plain meaning in pari materia and from its
language as a whole to determine the intent of the Legislature.[26]
Further, as mentioned above, we must construe a statute in pari
materia with other sections of the same act and in light of
UTC comments when the Legislature has incorporated them.
Accordingly, in interpreting the phrase "adequately protected,"
we must consider the comment to § 411 of the UTC and both
§ 30-3837 and the entirety of the Nebraska Uniform Trust Act
as a whole.

First, while the comment to § 411 states that it is only simi-
lar to the Restatements' provisions, rather than modeled after
them, this appears to be a result of § 411's being more broad
and encompassing than any of the referenced sections in the
Restatements. Despite the use of the phrase "adequately pro-
tected" in § 30-3837(e), rather the Restatements' phrase "not
prejudiced," nothing in the statute or the comment to § 411
indicates that the change in terminology was intended to effec-
tuate a change in the meaning of the common-law principle
regarding the rights of nonconsenting beneficiaries.

Instead, we interpret the phrase "adequately protected" as
incorporating the safeguards discussed in the Restatements

---

[25] *Id.*, § 340, comment *h.*, illustration 11 at 176.

[26] *State v. Robbins*, 297 Neb. 503, 900 N.W.2d 745 (2017).

to prevent prejudice to nonconsenting beneficiaries. The Restatements' use of the phrase "not prejudiced" required the additional explanation that modifications could be made by a court if the nonconsenting beneficiaries' rights would be adequately protected with appropriate safeguards.[27] Conversely, the use of the phrase "adequately protected" clearly conveys a court's ability to modify a trust upon determining that it will not likely harm nonconsenting beneficiaries' interests, with or without safeguards.

[12] The construction of a statute which restricts or removes a common-law right should not be adopted unless the plain words of the statute compel it.[28] Therefore, because the statute does not clearly convey that it intended to limit the rights that nonconsenting beneficiaries had at common law and we can reasonably construe the statute in a way that avoids limiting such rights, we must do so.

Second, the context of § 30-3837 and the Nebraska Uniform Trust Code implies that the phrase "adequately protected" should not be construed to limit the rights of nonconsenting beneficiaries. Section 30-3837 is focused on modifications of trusts with the consent of the beneficiaries and the settlor, either by actual consent or by being consistent with the purpose of the trust. The context of this statute does not suggest that a court may force a modification upon beneficiaries that will negatively affect their interests.

The comment to § 411 sets forth that subsection (e) allows the court to fashion an appropriate order protecting the interests of the nonconsenting beneficiaries while at the same time permitting the remainder of the trust property to be distributed without restriction. The order of protection for the nonconsenting beneficiaries might include partial continuation of the trust, the purchase of an annuity, or the valuation and cash out of the interest. Additionally, a court may order

---

[27] See Restatement (Third), *supra* note 21.

[28] *Tadros v. City of Omaha*, 273 Neb. 935, 735 N.W.2d 377 (2007).

a partial termination of the trust (or other arrangement that might involve bonding, insurance, or impounding of some trust property) in a manner that will not prejudice the interests of nonconsenting beneficiaries.[29]

Further, the comment to § 411 explains that modification may also be pursued through the UTC's §§ 412 to 416 without the need for beneficiary consent.[30] The Legislature also adopted these sections of the UTC by enacting §§ 30-3838 to 30-3842.

Section 30-3838(a), for example, permits modification of a trust, without any consent requirement, "if, because of circumstances not anticipated by the settlor, modification or termination will further the purposes of the trust." Both §§ 30-3837 and 30-3838 essentially require that a modification be consistent with the terms of the trust. However, the difference between the two statutes—to a nonconsenting beneficiary—is that interests must be "adequately protected" versus a proof of circumstances unanticipated by the settlor.

Interpreting the phrase "adequately protected" to mean that a nonconsenting beneficiaries' interests are not harmed too significantly would create a lessened burden for modifying trusts that is not focused on the cardinal rule of trust construction: the settlor's intent.[31]

[13] Accordingly, adopting the standard proposed by Gronin and Wells Fargo would not be consistent or harmonious with the structure of § 30-3837 or the Nebraska Uniform Trust Code. Therefore, for the interests of nonconsenting beneficiaries to be adequately protected, the court must determine that modification will not affect those interests and impose safeguards to prevent them from being affected, when deemed necessary.

---

[29] Restatement (Third), *supra* note 21.

[30] Unif. Trust Code, *supra* note 11.

[31] See *In re Family Trust Created Under Akerlund Trust*, 280 Neb. 89, 784 N.W.2d 110 (2010).

Here, Wells Fargo requested a modification of the Trust's terms that would increase monthly distributions to Gronin. However, any such increase would be at the direct expense of the eight known and the unknown beneficiaries' interests, because they have an interest in both the principal of the Trust and its future growth. Accordingly, the requested modification cannot satisfy the requirement that the interests of nonconsenting beneficiaries be adequately protected. Therefore, the court did not err in determining that modification was not appropriate under this subsection.

Gronin and Wells Fargo are correct in arguing that an appellate court should try to avoid, if possible, a statutory construction that would lead to an absurd result.[32] However, a construction is not absurd simply because it is narrow. Under our construction, subsection (e) still permits modification or termination of trusts as envisioned in the Restatements.

For example, in the context of the Trust, there are two scenarios where this subsection could apply. First, the terms of the Trust could have been modified to allow Gronin to receive the $500 monthly payment before Ruth's death if both women consented and Ruth was otherwise taken care of, even if the residuary beneficiaries did not consent.

Second—similar to illustration 11 above[33]—if only one residuary beneficiary of the Trust remained, then a court could modify or partially terminate the Trust to provide that beneficiary a portion of the residuary before Gronin's death, without her consent, if the court determined it was not inconsistent with the Trust's terms and the remainder of the principal was sufficient to fund Gronin's monthly payments. In that case, the court could require the beneficiary to obtain insurance or post a bond to ensure that Gronin's interests would be adequately protected in the event of unlikely circumstances.

---

[32] See *Adair Asset Mgmt. v. Terry's Legacy*, 293 Neb. 32, 875 N.W.2d 421 (2016).

[33] See Restatement (Second), *supra* note 21, § 340, comment *h*.

#### Common-Law Doctrine of Deviation Was Not Presented to County Court

As the parties acknowledge, the court was not presented with the issue of whether the Trust could be modified under the common-law doctrine of deviation. Instead, the parties argued and the court ruled on whether the Trust could be modified under § 30-3838. After the court's order, however, Gronin realized that § 30-3838 did not apply to the Trust, under § 30-38,110(d), because the Trust became irrevocable before January 1, 2005.

Nevertheless, Gronin and Wells Fargo argue that we can reverse the court's decision that modification was not warranted under § 30-3838 by considering the common-law doctrine of deviation. They argue that § 30-3838 is the codification of the doctrine of deviation; so, the court's decision was sufficient to present the issue on appeal. Further, they argue that the doctrine of deviation applies to trusts under § 30-3806.

[14] An issue not presented to or decided by the trial court is not appropriate for consideration on appeal.[34] As the parties argued, before we can consider the application of the common-law doctrine of deviation, we must determine both whether it applies to trusts in Nebraska, under § 30-3806, and whether its principles were modified by the Legislature in § 30-3838. Because the trial court was neither presented with nor ruled upon these issues, whether modification is warranted under the common-law doctrine of deviation is not appropriate for consideration on appeal. Therefore, we do not consider this assignment of error or Gronin's related assignments of error concerning findings that relate to the doctrine of deviation's application.

### CONCLUSION

We find that the court did not err in determining that the Trust could not be modified, under § 30-3837, because the

---

[34] *Wayne L. Ryan Revocable Trust v. Ryan*, 297 Neb. 761, 901 N.W.2d 671 (2017).

beneficiaries did not unanimously consent to the modification and the modification would not adequately protect the interests of the nonconsenting beneficiaries. Further, the doctrine of deviation was not appropriate for consideration on appeal. Therefore, we affirm.

Affirmed.

Wright and Miller-Lerman, JJ., not participating.

Cassel, J., concurring.

A path for relief may exist. The crux is how to "adequately protect[]"[1] the unknown beneficiaries, because *any* additional payment to Gronin would reduce their proceeds without their consent.

Some parties argue that no unknown beneficiaries actually exist. If the known beneficiaries believe that to be true and, based on that belief, are willing to pledge part of their shares, a path appears. By doing so, they could empower the trustee to hold the unknown beneficiaries harmless.

If no other beneficiaries were found, the known beneficiaries would have accommodated a needy lifetime beneficiary at no additional cost. If any were found, the known beneficiaries would suffer only what would appear to be a modest reduction in their future payout.

---

[1] See Neb. Rev. Stat. § 30-3837(e) (Reissue 2016).