IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)


IN RE GALE L. TUTTLE REVOCABLE TRUST


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


IN RE GALE L. TUTTLE REVOCABLE TRUST.

HARSHMAN LAND COMPANY, APPELLEE,
V.
B&B FAMILY FARMS, LLC, APPELLANT.


IN RE JEAN E. TUTTLE REVOCABLE TRUST.

HARSHMAN LAND COMPANY, APPELLEE,
V.
B&B FAMILY FARMS, LLC, APPELLANT.


Filed June 30, 2020.    Nos. A-19-841, A-19-842.


Appeals from the County Court for York County: LINDA S. CASTER SENFF, Judge. Affirmed in part, and in part reversed and vacated.

Kelly M. Thomas, of Svelha Law Offices, P.C., L.L.O., for appellant.

Timothy L. Moll, of Rembolt Ludtke, L.L.P., for appellee.


MOORE, Chief Judge, and RIEDMANN and ARTERBURN, Judges.

RIEDMANN, Judge.

### INTRODUCTION

Harshman Land Company (Harshman) filed a petition in the county court for York County for order of trust administration, asking the court to order the trustee of a trust to retain the services of Harshman. B&B Family Farms, LLC (B&B Farms), filed a separate petition for modification

- 1 -

of the same trust. The county court consolidated the cases for hearing and decision and ultimately granted Harshman's petition but denied B&B Farms' petition. B&B Farms appeals. As explained below, we affirm in part, and in part reverse and vacate.

BACKGROUND

Gale L. Tuttle and his wife owned multiple pieces of agricultural real estate in various counties in Nebraska. In October 2001, Gale executed a trust agreement, which established the Gale L. Tuttle Revocable Trust. The trust agreement provided that upon the death of the survivor of Gale and his wife, the trust property was to be held for the benefit of Gale's children. Gale and his wife have one surviving daughter, Cathy Buonaiuto. During Cathy's lifetime, she is entitled to the income from the trust.

As relevant to this appeal, Article VIII of the trust agreement, entitled "Trustee Succession, Trustee's Fees and Other Matters," contained certain provisions regarding trustees and successor trustees and compensation for their services. In September 2008, Gale executed an amendment to the trust agreement. The amended Article VIII added a new paragraph regarding management of the agricultural real estate, which provides:

> It is Grantor's intention and direction that Harshman Land Company shall be the Farm Manager of the agricultural real estate which makes up part of the principal of this trust. Grantor and Grantor's spouse have negotiated a fee agreement with Harshman Land Company and it is Grantor's direction to the Trustee that said management remain in place in accordance with said management agreement. It is Grantor's further direction that the Trustee shall not receive any fees in connection with the management of the agricultural real estate. In the event the Trustee is unwilling to accept trusteeship without receiving fees for the agricultural real estate, then and in that event the adult beneficiaries of this trust shall name a Successor Trustee who may be a corporation or an individual but the individual may not be related by blood or marriage to the trust beneficiaries.

The farm management agreement with Harshman referenced in the amendment provides that the agreement shall continue until terminated by either party by giving 30 days written notice prior to March 1 of the ensuing crop year.

The amended Article VIII also changed the particular bank named as successor or substitute trustee and added the provision that in the event the named corporate trustees were not in existence or unwilling to accept trusteeship, the adult beneficiaries of the trust shall name a successor trustee, a corporation or individual, but the individual may not be related by blood or marriage to the beneficiaries. The amendment further added a requirement that any corporate successor to the corporate fiduciary be subject to approval of the beneficiaries or replacement. Finally, in the amendment, Gale's wife agreed to waive her right to receive her share of the augmented estate.

Gale and his wife passed away in 2010. Thereafter, title to the agricultural land was transferred to B&B Farms in exchange for ownership interests in B&B Farms. Currently, the trust owns 50 percent of B&B Farms, and Cathy and her husband own the other 50 percent.

In November 2018, B&B Farms notified Harshman that it was terminating the farm management agreement at the conclusion of the 2018 crop year. As a result, in March 2019, Harshman filed a petition for order of trust administration asking the county court to order the trustee to retain the services of Harshman. In April 2019, B&B Farms filed a petition for order for trust administration, which asked the court to allow modification of the trust to replace Harshman as farm manager.

After holding a hearing, the county court entered a written order interpreting the trust agreement to find that Gale's intention was that he wanted Harshman, specifically, to be the farm manager. The court therefore granted Harshman's petition and ordered the trustee to retain Harshman's services. With respect to B&B Farms' request to modify the trust, the court found that the requirements for modifying a trust pursuant to Neb. Rev. Stat. § 30-3837(b) (Reissue 2016) were not satisfied because not all of the beneficiaries of the trust had consented to modification and the requested modification was inconsistent with a material purpose of the trust. B&B Farms' petition was therefore denied.

B&B Farms filed a motion for new trial, which was denied. B&B Farms appeals.

## ASSIGNMENTS OF ERROR

B&B Farms assigns that the county court erred in (1) finding that the statutory requirements for amending the trust were not met, (2) finding that the consents of the known beneficiaries to amend the trust agreement did not represent the interests of all future beneficiaries, (3) finding that the proposed amendment was inconsistent with a material term of the trust, and (4) granting Harshman's petition and ordering the trust to retain Harshman as manager of the agricultural property held by the trust.

## STANDARD OF REVIEW

Absent an equity question, an appellate court reviews trust administration matters for error appearing on the record; but where an equity question is presented, appellate review of that issue is de novo on the record. *In re Trust Created by Augustin*, 27 Neb. App. 593, 935 N.W.2d 493 (2019). When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id*. In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions concerning the matters at issue. *Id*.

The interpretation of the words in a will or a trust presents a question of law. *Id*.

## ANALYSIS

In sum, B&B Farms argues that the county court erred in refusing to allow modification of the trust to allow replacement of Harshman as farm manager and, relatedly, erred in ordering the trustee to retain the services of Harshman. We conclude that the plain language of the trust agreement does not prevent B&B Farms from terminating the farm management agreement with Harshman; thus, modification of the trust to remove Harshman was not necessary. We therefore

affirm the county court's decision to deny the petition to modify the trust, but reverse the order granting Harshman's petition and vacate the order requiring the retention of Harshman.

The question presented here is the interpretation of the language in the amended Article VIII of the trust agreement. The primary rule of construction for trusts is that a court must, if possible, ascertain the intention of the testator or creator. *In re Family Trust Created Under Akerlund Trust*, 280 Neb. 89, 784 N.W.2d 110 (2010). The interpretation of the words of a trust is a question of law. *Id*. Appeals involving the administration of a trust are equity matters and are reviewable in an appellate court de novo on the record. *Id*. In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions concerning the matters at issue. *Id*. In interpreting a trust, the entire instrument, all its parts, and its general purpose and scope are to be considered; no parts are to be disregarded as meaningless if any meaning can be given them consistent with the rest of the instrument. *Id*.

The relevant portion of Article VIII is contained in the newly added first paragraph, which states Gale's intention that Harshman shall be the farm manager. The county court concluded based on this sentence that it was Gale's intention to specifically name Harshman as farm manager. We agree; however, we cannot ignore the following sentence, which provides that Gale and his wife negotiated a fee agreement with Harshman and that it is Gale's direction to the trustee that Harshman's management *remain in place in accordance with the farm management agreement*.

The rules of construction for interpreting a trust are applied when the language of the trust is not clear; but if the language clearly expresses the settlor's intent, the rules do not apply. *In re Wendland-Reiner Trust*, 267 Neb. 696, 677 N.W.2d 117 (2004). We find that the language of the amendment clearly expresses Gale's intent to prevent the successor corporate trustee from terminating Harshman, but does not prevent B&B Farms to do so under the terms of the management agreement. We note the specific language Gale elected to use in the amendment. Rather than merely stating an intent that Harshman shall be the farm manager, the amendment states that it is Gale's *direction to the trustee* that management of the agricultural land remain with Harshman in accordance with the management agreement. The amendment continues on to state that it is Gale's further direction *that the trustee shall not receive any fees* in connection with the management of the agricultural land. The plain language of the amendment limits the trustee's ability to terminate the management agreement, but it does not impede the ability of the parties to the agreement to do so.

The farm management agreement contains a termination provision that states, "This agreement shall continue until terminated by either party by giving them thirty days written notice prior to March 1 of the ensuing crop year." The parties to the management agreement are B&B Farms and Harshman, meaning either of the two could elect to terminate the agreement. If we were to find that neither party could terminate the agreement, we would render meaningless Gale's direction that Harshman's management remain in place in accordance with the farm management agreement.

In reaching this conclusion, we also consider Cathy's testimony that she, through B&B Farms, had the authority to replace Harshman and that her parents gave her the names of some other farm managers in case she wanted to replace Harshman. Neb. Rev. Stat. § 30-3803(19) (Reissue 2016) defines "terms of a trust" as the manifestation of the settlor's intent regarding a

trust's provisions as expressed in the trust instrument or as may be established by other evidence that would be admissible in a judicial proceeding. Cathy's testimony supports the inference that although the amendment specifically named Harshman, Gale's intent was to have a farm manager manage the real property as opposed to allowing a successor corporate trustee to manage it or to terminate the management agreement, and not that Harshman's services were to be retained without exception.

As a result, B&B Farms was authorized to terminate the farm management agreement with Harshman without requiring modification of the trust agreement. The county court therefore erred in ordering the trustee to retain the services of Harshman, and the court's order to that effect is reversed and vacated. Because no modification of the trust was necessary, we find no error in the court's decision to deny B&B Farms' petition to modify the trust. Therefore, we affirm that portion of the court's order.

## CONCLUSION

As explained above, we affirm the county court's order denying B&B Farms' petition for modification of trust, but reverse and vacate the county court's order directing the trustee to retain the services of Harshman.

AFFIRMED IN PART, AND IN PART
REVERSED AND VACATED.