IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE TRUST OF BARR

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE TRUST OF RAY D. BARR, DECEASED.

NANCY O'BRIEN, APPELLANT,

V.

JERROD BARR ET AL., APPELLEES.

Filed July 28, 2020.    No. A-19-1191.

Appeal from the County Court for Douglas County: JEFFREY L. MARCUZZO, Judge. Affirmed.

Patrick A. McCormick for appellant.

Howard L. Neuhaus, P.C., L.L.O., for appellee.

PIRTLE, RIEDMANN, and ARTERBURN, Judges.

PIRTLE, Judge.

## INTRODUCTION

Nancy O'Brien appeals from an order of the county court for Douglas County regarding her petition for instructions and declaration of rights. O'Brien argues that the county court erred in (1) its interpretation of the Trust Agreement and Trust Amendments, (2) denying O'Brien's request to remove the cotrustees, (3) denying O'Brien's request to require further trust accountings, and (4) denying O'Brien's request for attorney fees and costs. For the reasons that follow, we affirm.

- 1 -

## BACKGROUND

### PROCEDURAL BACKGROUND

O'Brien filed her petition for instructions and declaration of rights on April 12, 2019. The petition alleged that Ray R. Barr (Ray), a cotrustee of the trust created by Ray D. Barr (Grantor), committed various serious breaches of trust. The petition also alleged that Laura Beth Barr (Laura Beth), cotrustee, was "88 years of age and is of deteriorating mental ability and no longer is able [to] adequately function as Co-Trustee." In addition, the petition sought an order from the court requiring an accounting of the trust at issue, and the award of attorney fees and costs associated with the action. Finally, the petition sought a declaration of rights from the county court, ordering the trust to be administered according to such declaration.

That same day, O'Brien filed a registration of trust with the county court for "a Trust established by Ray D. Barr as Grantor, during his lifetime, dated February 26, 1993, along with various revisions, restatements and amendments, with Nancy L. O'Brien and Ray R. Barr designated as original co-trustees."

On August 5, 2019, Ray and Laura Beth filed a response to the petition, denying that either had committed a breach of their duties as cotrustees; affirmatively alleging that O'Brien was not a beneficiary under any trust with assets, and therefore was not entitled to an accounting; and denying that O'Brien was entitled to the payment of attorney fees out of the trust. On September 12, 2019, "the Trust established by [Grantor], and all Amendments thereto, referred to in the Registration of Trust filed herein on April 12, 2019," was filed with the county court. An Amendment to response to the petition was filed on November 12, 2019.

Trial was held on O'Brien's petition for instructions and declaration of rights on November 20, 2019. After trial, the county court issued an order finding that O'Brien was a beneficiary of the "Family Regular Trust" but was not a beneficiary of the "Family GST Trust," both of which were created by the "Family Trust." The order found that all assets and monies were properly placed in the Family GST-Exempt Trust and that O'Brien was not entitled to a distribution from the Family GST-Exempt Trust. The order further found that the cotrustees acted appropriately in the administration of the trusts and denied O'Brien's request for the removal of the cotrustees, further trust accountings, and attorney fees. It is from this order that O'Brien now appeals.

### TRIAL

At trial, the Trust Agreement for the "Ray D. Barr Trust," executed on February 26, 1993, was introduced as exhibit 1. Subsequent amendments to the Ray D. Barr Trust were introduced as exhibit 2. The Trust Agreement, amended and restated on April 2, 2001, named O'Brien and Ray as successor trustees in the event that the Grantor was no longer serving as trustee. The trust was later amended to remove O'Brien from the list of replacement trustees.

Section 4.2 of the trust provides for Laura Beth, the Grantor's wife, the right to use the Grantor's residence upon his death, subject to certain conditions. It further provides that the "taxes, utilities, insurance, repairs, maintenance, and other costs of operation of the Grantor's residence shall be paid by the Family Regular Trust."

Section 4.3 of the trust establishes the "Family Trust" upon the Grantor's death, which is to "consist of all of the assets of the trust at the time of the death of the Grantor and any assets received by the trust after the death of the Grantor." Section 4.4 provides that the Family Trust "may distribute the sum of $5,000" for the care of the family mausoleum and gravesites, adjusted for inflation. This amount was amended to $10,000 in a May 2010 amendment.

Section 4.5 dictates that the Family Trust should be divided into two separate trusts for the purpose of maximizing the exemption from the federal generation-skipping transfer tax. Under section 4.6, the two trusts established from the Family Trust are to be the "Family Regular Trust" and the "Family GST-Exempt Trust," with the "maximum amount available at the Grantor's death which will result in an inclusion ratio for the Family GST-Exempt Trust being zero" being allocated to the Family GST-Exempt Trust and "[a]ll items of income in respect of a decedent may be allocated to the Family Regular Trust."

Under section 5.3, 27 percent of the Family Regular Trust income was to be distributed to O'Brien. Under section 6.1, 20 percent of the Family GST-Exempt Trust income was to be distributed to O'Brien. An April 5, 2007, amendment modified section 5.3 and section 6.1 to provide that the income distributed to the Grantor's children, including O'Brien, be distributed "only to the extent of one-half of the net cash flow from the assets of said Trust."

On May 18, 2010, section 5.3 of the Ray D. Barr Trust was amended to decrease O'Brien's share of the income of the Family Regular Trust to 25 percent. Section 6.1 was amended to increase O'Brien's share of the income of the Family GST-Exempt Trust to 25 percent.

On July 6, 2011, section 5.2 of the Ray D. Barr Trust was amended to provide that "[t]he Family Trust will distribute the sum of $10,000 to Nancy Lynn O'Brien," adjusted for inflation. Section 5.3 was amended to eliminate O'Brien's share of the income of the Family Regular Trust, and provided that Ray was to receive 100 percent of the trust income. Section 6.1 was amended to eliminate O'Brien's share of the income of the Family GST-Exempt Trust, and provided that Ray was to receive 80 percent of the trust income.

On August 9, 2011, section 5.2 was replaced and modified to provide O'Brien with "the lesser of 5% of one-twelfth [sic] (1/12) of the previous year's accounting income for trust accounting purposes as defined in Section 17.3 or $500 per month." The dollar amount, but not the percent, was to be adjusted for inflation. This was the final amendment to the trust provisions affecting O'Brien's share in the various trusts created from the Ray D. Barr Trust before the Grantor's death in 2014.

The requirement of an accounting of the trust assets is enumerated in section 17.2 and provides, in part:

> [An] accounting shall be made quarterly or at any other reasonable interval determined by the trustee, but no less often than annually. The accounting shall be made to all adult beneficiaries and to the conservator (or to the guardian if there is no conservator) of any minor or incompetent beneficiary.

Ray, the son of Grantor, was called as the first witness in O'Brien's case-in-chief. Ray testified that Laura Beth resided in the Grantor's residence for "a couple of years" following the Grantor's death. Ray testified that, despite section 4.2 providing that the taxes, utilities, etc.,

associated with the residence were to be paid out of the Family Regular Trust, he paid such expenses out of the Family GST-Exempt Trust because it was the "only trust that there was any money in." He also testified that the permitted $5,000 (amended to $10,000) distribution to Evergreen Memorial for the care of the family gravesites was not utilized because Ray and his wife, Laura, "would just take care of the graves [them]selves four or five times a year."

Ray testified that upon the Grantor's death, "all the proceeds went into -- all of the assets went into the [Family] GST-Exempt Trust." Ray testified that acting as cotrustee, he provided an accounting of the trust to all adult beneficiaries as of the latest amendment to the trust. He testified that he provided an annual accounting in every year since 2014 through the time of trial.

According to Ray, all of the assets of the Family Regular Trust were allocated to the Family GST-Exempt Trust in order "to take advantage of the tax advantages -- to reduce the amount of taxes paid." In their amendment to the response to the petition, Ray and Laura Beth, cotrustees, asserted that $5,327,594 (reflecting a total asset value within the Ray D. Barr Trust of $5,599,002 less deductions of $271,408) was allocated to the Family GST-Exempt Trust, taking full advantage of the permitted $5,340,000 federal tax exemption amount. Ray agreed that this was the reason O'Brien had not received any benefits "because there are no Family Regular Trust assets." Ray acknowledged that he did not set aside any money for O'Brien to receive income as provided under the August 9, 2011, amendment to section 5.2 allocating "the lesser of 5% of one-twelfth [sic] (1/12) of the previous year's accounting income . . . or $500 per month."

Ray acknowledged that section 4.6 of the trust provides: "Once the Family Trust is established, after the funds in prior sections of this article have been established, the Family Trust shall be divided into two trusts, the Family Regular Trust and the Family GST-Exempt Trust."

Ray testified that he did not allocate any money to the Family Trust for the benefit of O'Brien prior to dividing the Family Trust into the two separate trusts.

On cross-examination, Ray testified that the "Family Trust" consisted of all of the assets coming into the trust, and that the first item directed under the Trust Agreement was to set aside certain funds for the care of the Grantor's residence and the family gravesite. According to Ray, the Trust Agreement next directs that the Family Trust be divided into the "Family Regular Trust" and the "Family GST-Exempt Trust" and this was not altered by any subsequent amendments to the Trust Agreement. Ray testified that the provisions allocating payment to O'Brien are located under section 5.2 of the Trust Agreement. Based on that sequence, Ray testified that the Family Trust was already divided into the two separate trusts before section 5.2 came into effect, and the Family Trust had no funds at that time. Because of this, Ray determined that O'Brien was not a beneficiary with an interest in any available assets.

Called as a witness in her own behalf, O'Brien testified that she was familiar with the Ray D. Barr Trust Agreement and its various amendments. O'Brien testified that she did not receive an accounting of the trust assets after the Grantor's death in 2014. At the time of trial, O'Brien had only received "a copy of a tax return that had to do with the taxes -- the state taxes, et cetera, that were paid at the time of [Grantor's] death." O'Brien testified that she believed that, under the most recent amendment to section 5.2, she was entitled to 5 percent of 1/12 of the previous year's accounting income or $500 per month since the Grantor's death.

- 4 -

On cross-examination, O'Brien acknowledged that section 4.4, related to the care of the family gravesites, states "The Family Trust *may* distribute the sum of $5,000 . . ." rather than "*shall* distribute." (Emphasis supplied.)

After O'Brien's testimony, she rested her case-in-chief.

Ray was recalled to the witness stand to testify on the cotrustees' behalf. He testified that he and Laura Beth, who was married to the Grantor, act as cotrustees of the Ray D. Barr Trust. He testified that Laura Beth lives in Florida, but the two actively discuss trust matters with each other.

Ray testified that his father, the Grantor of the Ray D. Barr Trust, was a certified public accountant and later began investing in real estate, specifically apartment buildings. Ray indicated that his father was "pretty sharp" and was responsible for the organization of his trust, knew "how he wanted it to flow," and personally wrote the amendments to the trust. Ray testified that his father did not have any memory issues leading up to his death and that he "knew where every penny went."

Ray's wife, Laura, is the president of R.D. Barr Company, which manages the apartment complexes under the trust. According to Ray, Laura "handles most of the day-to-day issues" related to the apartment complexes. When Laura became a real estate broker, around 2004, the Grantor passed on the real estate company to Ray and Laura. Ray testified that the Grantor directed that R.D. Barr Company manage the apartment complexes, and that such was not a decision Ray made as trustee.

Exhibit 4, the operating agreement for "Windsor Woods Properties, L.L.C.," an entity overseeing one of the apartment buildings, indicates that R.D. Barr Company is to act as manager. Ray testified that the operating agreements for each of the apartment entities includes identical language related to its management.

Ray testified that as cotrustee, he hired a real estate appraiser to determine the value of the real estate and a separate company to appraise each of the LLCs. Exhibit 5 is an "Appraisal Report" for each of ten business entities organized for the individual apartment complexes. The reports reflect the appraisal values for the entities at the time of the Grantor's death. After determining the assets and values within the trust, Ray had a federal estate tax return prepared. Exhibit 6, the Form 706 used for estate and generation-skipping transfer tax returns, reflects a value of $5,327,594 for the taxable estate. Ray testified that the amount was pulled directly from the tax return to determine what assets went into the Family GST-Exempt Trust. The Form 706 reflects an applicable federal estate tax exemption of $5,340,000.

Ray was unsure whether the division of the initial trust into two separate trusts, the Family GST-Exempt Trust and the Family Regular Trust, was explained to O'Brien due to the fact that "she wasn't a beneficiary." Ray testified that his attorney previously answered O'Brien's questions regarding the allocation of trust assets between the two trusts.

On cross-examination, Ray testified that his mother, Laura Beth, turned 90 years old at the time of trial and, like her husband, was "sharp as a tack." Ray estimated that approximately 97 percent of the value of the trust assets consisted of apartment complexes. He further testified that his role in managing the R.D. Barr Company consists of discussing various maintenance issues, such as plumbing, heating, and air conditioning, with his wife, Laura. Ray was unable to estimate what the annual revenue from the apartment rents was. Ray acknowledged that he signed the estate

tax return form as "Ray R. Barr, Managing Member." He testified that he is "managing member of all of the apartments."

After Ray's testimony, the parties presented closing arguments and rested.

The county court found that it was the intent of the Grantor to provide for O'Brien as a beneficiary of the Family Regular Trust, but not as a beneficiary of the Family GST-Exempt Trust. The court further found:

> All the original assets and monies of the Ray D. Barr estate were properly placed in the Family GST Trust. No assets or monies to the Ray D. Barr estate were placed in the Family Regular Trust, and the Family Regular Trust contained no assets or monies to distribute to any beneficiaries.
>
> Petitioner, Nancy O'Brien, is not entitled to any assets or monies contained in the Family GST Trust. The current co-trustees have acted properly in the administration of the trust subject to this hearing.

The county court denied O'Brien's request for removal of the cotrustees, further trust accountings, and attorney fees and costs. This appeal followed.

## ASSIGNMENTS OF ERROR

O'Brien assigns that the county court erred in (1) its interpretation of the Trust Agreement and Trust Amendments, (2) denying O'Brien's request to remove the cotrustees, (3) denying O'Brien's request to require further trust accountings, and (4) denying O'Brien's request for attorney fees and costs.

## STANDARD OF REVIEW

Absent an equity question, an appellate court reviews trust administration matters for error appearing on the record; but where an equity question is presented, appellate review of that issue is de novo on the record. *In re Estate of Forgey*, 298 Neb. 865, 906 N.W.2d 618 (2018). In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions concerning the matters at issue. *Id*. When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id*.

When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id*. An appellate court, in reviewing a judgment for errors appearing on the record, will not substitute its factual findings for those of the trial court when competent evidence supports those findings. *Id*.

The removal of a trustee is a question of equity, and therefore an appellate court reviews the issue de novo on the record. *In re Trust Created by Fenske*, 303 Neb. 430, 930 N.W.2d 43 (2019).

The interpretation of the words in a will or a trust presents a question of law. *In re Estate of Forgey, supra*.

A trial court's decision awarding or denying attorney fees will be upheld on appeal absent an abuse of discretion. *In re Conservatorship of Abbott*, 295 Neb. 510, 890 N.W.2d 469 (2017). A judicial abuse of discretion requires that the reasons or rulings of the trial court be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result. *Id*.

ANALYSIS

TRUST INTERPRETATION

O'Brien first argues that the county court's findings were in error when it interpreted the Trust Agreement and Trust Amendments. The county court found that O'Brien is a beneficiary of the "Family Regular Trust created by the Family Trust" and that she is not a beneficiary of the "Family GST Trust created by the Family Trust." O'Brien argues that the plain language of the Trust Agreement "directs continuing benefits of approximately $500 (five hundred dollars) per month be disbursed to Nancy O'Brien from the Family Trust." Brief for appellant at 13. O'Brien also argues that the county court incorrectly found that all of the original trust assets and monies were properly placed in the Family GST-Exempt Trust. We find no error by the county court.

The primary rule of construction for trusts is that a court must, if possible, ascertain the intention of the testator or creator. When there are two or more instruments relating to a trust, they should be construed together to carry out the settlor's intent. *In re Wendland-Reiner Trust*, 267 Neb. 696, 677 N.W.2d 117 (2004). O'Brien's argument centers on her construction of section 5.2 of the Ray D. Barr Trust, as amended in August 2011. The amendment reads:

> Section 5.2 is replaced with the following. The Family Trust will distribute the sum of $1,000 to my Goddaughter Jill Lovejoy Jackson. Nancy O'Brien should receive the lesser of 5% of one-twelfth [sic] (1/12) of the previous year's accounting income for trust accounting purposes as defined in Section 17.3 or $500 per month. The dollar amounts, not the percent, in this section shall be adjusted for inflation in the same manner as provided in Section 8.2.

O'Brien argues that this provision clearly directs a benefit to her from the "Family Trust." She contends that a distribution of assets to the Family Trust to account for this benefit, as well as for the use of the Grantor's residence by his wife and the care of family gravesites, should have been made prior to the division of the Family Trust into the "Family Regular Trust" and the "Family GST-Exempt Trust." However, when construing the entirety of the Trust Agreement and Trust Amendments, we agree with the county court.

In construing the various provisions of the Trust Agreement and Trust Amendments, we find that the Grantor's intent was for the "Ray D. Barr Trust" to become the "Family Trust" upon his death under section 4.3: "The Family Trust shall consist of all of the assets of the trust at the time of the death of the Grantor and any assets received by the trust after the death of the Grantor."

The division of the Family Trust into the Family Regular Trust and the Family GST-Exempt Trust is directed by section 4.6:

> Section 4.6. Division of Family Trust: Once the Family Trust is established, *after the funds in prior sections of this article have been established*, the Family Trust shall be divided

into two trusts, the Family Regular Trust and the Family GST-Exempt Trust. The value passing to the two trusts shall be determined as follows:

(A) The value of the Family Trust shall be determined using the values as finally determined for federal estate tax purposes.

(B) The amount allocated to the Family GST-Exempt Trust shall be the maximum amount available at the Grantor's death which will result in an inclusion ratio for the Family GST-Exempt Trust being zero. In making these calculations the trustee shall use the full use of the generation skipping tax exemption available at Grantor's death reduced by the sum of the following:

. . . .

(C) In allocating assets between the Family Regular Trust and the Family GST-Exempt Trust, the trustee may fund the Family GST-Exempt Trust with assets distributed in kind, in cash or partially in each. The trustee may distribute assets disproportionately between the two trusts and may make non-prorata in kind distributions.

(D) All items of income in respect of a decedent may be allocated to the Family Regular Trust. It is Grantor's hope that the Family GST-Exempt Trust will be funded with real estate type investments.

(Emphasis supplied.)

The cotrustees argue, and we agree, that "the only money that could remain in the Family Trust would have been the $10,000 [the Grantor] said could be set aside for maintaining the family gravesite." Brief for appellees at 9. Any benefit for O'Brien would not have been allocated prior to the division of the Family Trust into the two separate trusts. We note that the cotrustees did not act impermissibly by caring for the family gravesites with their own funds and labor, rather than distributing from the Family Trust. Such directive under section 4.4 was permissible, not mandatory ("[t]he Family Trust *may* distribute . . ."). (Emphasis supplied.)

O'Brien directs us to section 22.2 in arguing that the heading of section 5.2 (Article 5. Family Regular Trust Distributions) does not mean her benefit was to come from the Family Regular Trust, as opposed to the Family Trust. Section 22.2 reads: "All headings used in this trust are intended for convenience only and shall not control or affect the meaning, the construction or the effect of the trust or of any of the provisions of this trust."

However, regardless of the language of the heading, we believe the provisions related to the initial division into the Family Regular Trust and the Family GST-Exempt Trust are sufficient to conclude that the Grantor intended O'Brien to be a beneficiary of the Family Regular Trust. After the various trust amendments, section 5.2 was the only provision remaining that provided a benefit for O'Brien. Section 4.6 states that "[o]nce the Family Trust is established, after the funds *in prior sections of this article* have been established, the Family Trust shall be divided into two trusts, the Family Regular Trust and the Family GST-Exempt Trust." (Emphasis supplied.) Section 5.2 is clearly not a prior section of article 4, and therefore its directives did not take effect until *after* the division of the Family Trust. Furthermore, under section 4.6, no money was required to be set aside for purposes other than those enumerated in article 4, which did not provide any benefit for O'Brien within its provisions.

Regardless of whether O'Brien was intended to be a beneficiary under the Family Trust or the Family Regular Trust, we reach the same result: neither trust had any assets or monies to distribute, nor was O'Brien entitled to any benefit. The language of section 4.6 is clear that after the Grantor's death, the Family Trust is to be established. Then, after funds in "prior sections of [article 4] have been established, the Family Trust shall be divided into two trusts, the Family Regular Trust and the Family GST-Exempt Trust." The funding of the Family GST-Exempt Trust was to "use the full use of the generation skipping tax exemption available at Grantor's death." The evidence shows that the maximum deduction available was $5,340,000 and the Grantor's taxable estate was valued at $5,327,594. Accordingly, the cotrustees allocated the entire value of the taxable estate into the Family GST-Exempt Trust to take full advantage of the tax exemption, as directed by the terms of the trust. Because it is undisputed that O'Brien was not a beneficiary of the Family GST-Exempt Trust, and we agree with the county court that the cotrustees acted appropriately by allocating the entire estate value to the Family GST-Exempt Trust, we find O'Brien was not a beneficiary of any trust with available assets or monies, and affirm the county court's interpretation of the Trust Agreement and Trust Amendments.

REQUEST TO REMOVE COTRUSTEES

O'Brien's second assignment of error is that the county court erred when it denied her request to remove the cotrustees. We find no error by the county court on this issue.

Neb. Rev. Stat. § 30-3862 (Reissue 2016) provides the statutory authority for courts to remove trustees under various circumstances. Under § 30-3862:

> (a) The settlor, a cotrustee, or a beneficiary may request the court to remove a trustee, or a trustee may be removed by the court on its own initiative.
> (b) The court may remove a trustee if:
> (1) the trustee has committed a serious breach of trust;
> . . . .
> (3) because of unfitness, unwillingness, or persistent failure of the trustee to administer the trust effectively, the court determines that removal of the trustee best serves the interests of the beneficiaries[.]

Under Neb. Rev. Stat. § 30-3890 (Reissue 2016), "[a] violation by a trustee of a duty the trustee owes to a beneficiary is a breach of trust." A breach of trust alone is insufficient to warrant removal of a trustee. The language of § 30-3862, which provides that a breach warranting removal shall be "serious," is identical to that of Unif. Trust Code § 706, 7D U.L.A. 254 (2018), which explains in the comments:

> The breach must be "serious." A serious breach of trust may consist of a single act that causes significant harm or involves flagrant misconduct. A serious breach of trust may also consist of smaller breaches, none of which individually justify removal when considered alone, but which do so when considered together.

See, also, *In re Estate of Robb*, 21 Neb. App. 429, 839 N.W.2d 368 (2013).

O'Brien first argues that the county court erred in denying her request to remove the cotrustees because the cotrustees did not appropriately administer the trust. O'Brien argues that the cotrustees did not follow the terms of the Trust Agreement when (1) Ray paid expenses related to Laura Beth's use of the Grantor's residence out of the Family GST-Exempt Trust rather than the Family Regular Trust; (2) Ray and his wife, Laura, personally took care of the family gravesites, rather than setting aside funds from the Family Trust; and (3) the cotrustees did not distribute any trust assets or monies to O'Brien despite terms providing for her benefit. We have already determined that the county court was correct in its interpretation of the Trust Agreement and Trust Amendments, specifically as the provisions relate to administration of the trust assets by the cotrustees. We therefore find no error by the county court in declining to remove the cotrustees for failure to appropriately administer the trust.

O'Brien's primary argument for the removal of the cotrustees, specifically Ray, is that Ray has committed a serious breach of trust by violating his duty of loyalty to the trust beneficiaries by engaging in forms of self-dealing. We again find no error by the county court in denying O'Brien's request to remove the cotrustees.

Under Neb. Rev. Stat. § 30-3867(a) (Reissue 2016), "[a] trustee shall administer the trust solely in the interests of the beneficiaries." Subsection (b) of § 30-3867, subject to several exceptions, further provides that "a sale, encumbrance, or other transaction involving the investment or management of trust property entered into by the trustee for the trustee's own personal account or which is otherwise affected by a conflict between the trustee's fiduciary and personal interests is voidable by a beneficiary affected by the transaction[.]"

O'Brien argues that because the "trust assets are primarily apartment complexes which are managed by the R.D. Barr Company, and Ray R. Barr, the trustee's wife, Laura, is the president of the R.D. Barr Company and handles most of the day-to-day activities of the company[,]" this is evidence of a conflict of interest and self-dealing because "[Ray] and his family stand to gain the most by eliminating Nancy O'Brien from benefit [sic] from the trust." Brief for appellant at 19, 22.

However, § 30-3867(b) provides that a transaction involving an apparent conflict of interest or self-dealing is not voidable if "(5) the transaction involves a contract entered into or claim acquired by the trustee before the person became or contemplated becoming trustee." In this case, the operating agreements for the various limited liability companies associated with the apartment complexes under the trust provide: "The Company shall employ R.D. Barr Co., a Nebraska corporation, as manager of the Project[.]"

Ray testified that each of the LLCs organized for the various apartment complexes has identical language within its operating agreement. He testified that the directive for R.D. Barr Company, which Ray and his wife, Laura, have owned and managed since approximately 2004, to manage the various real estate entities was done long before he became trustee. The original Trust Agreement, dated April 2, 2001, and all subsequent amendments, as late as August 26, 2011, retain Ray as a successor trustee after the Grantor ceased to act as trustee. It is clear to us that the Grantor was aware of the position Ray would be in by acting simultaneously as an owner of R.D. Barr Company and as a cotrustee of the Ray D. Barr Trust. It is also clear to us that this is the type of scenario that falls under the exception of § 30-3867(b)(5) and does not amount to a serious

breach of trust. It was not an error for the county court to deny O'Brien's request to remove the cotrustees.

REQUEST FOR TRUST ACCOUNTINGS

O'Brien next argues that the county court erred when it denied her request to require further accountings. We find no error by the county court. Section 17.2 of the Trust Agreement provides, in part:

> [An] accounting shall be made quarterly or at any other reasonable interval determined by the trustee, but no less often than annually. The accounting shall be made to *all adult beneficiaries* and to the conservator (or to the guardian if there is no conservator) of any minor or incompetent beneficiary.

(Emphasis supplied.)

Section 22.1, under the "Miscellaneous Provisions" article of the trust, provides: "Section 22.1. Governing Law: This trust shall be governed, construed and administered according to the laws of the State of Nebraska, even though trust property is kept outside of the State of Nebraska." Under the Nebraska Uniform Trust Code, Neb. Rev. Stat. § 30-3803(3) (Reissue 2016), a "beneficiary" is defined as a person that: "(A) has a present or future beneficial interest in a trust, vested or contingent; or (B) in a capacity other than that of trustee, holds a power of appointment over trust property."

As we previously discussed, the Ray D. Barr Trust became the "Family Trust" under article 4 of the Trust Agreement upon the Grantor's death. The Family Trust was then to be divided into two separate trusts: the "Family Regular Trust" and the "Family GST-Exempt Trust." Once the division took place, the cotrustees appropriately allocated all of the trust assets into the Family GST-Exempt Trust. O'Brien is not a beneficiary of the Family GST-Exempt Trust. The Family Regular Trust, which the county court correctly found is the only trust that O'Brien is a beneficiary under, was not allocated any of the trust assets. Without any trust assets to account, and therefore no "beneficial interest" held by O'Brien under the trust, the cotrustees had no obligation to account to O'Brien and the county court did not err by denying O'Brien's request for further accountings.

REQUEST FOR ATTORNEY FEES

O'Brien's final assignment of error is that the county court abused its discretion when it denied her request for attorney fees and costs. We disagree. The award of attorney fees and costs in a trust administration proceeding is governed by Neb. Rev. Stat. § 30-3893 (Reissue 2016), which provides: "In a judicial proceeding involving the administration of a trust, the court, as justice and equity may require, may award costs and expenses, including reasonable attorney's fees, to any party, to be paid by another party or from the trust that is the subject of the controversy."

In this case, the county court found that O'Brien was not entitled to recovery of any assets or monies under the terms of the Trust Agreement. The court further denied O'Brien's request to remove the cotrustees and her request to require further accountings. We affirm the county court's

order in all respects, and accordingly find that the county court did not abuse its discretion by denying O'Brien's request for attorney fees and costs.

## CONCLUSION

For the reasons mentioned herein, we find that the county court did not err in its interpretation of the Trust Agreement and Trust Amendments; nor in its denial of O'Brien's requests for removal of the cotrustees, for further accountings, and for attorney fees and costs. The order of the county court is affirmed.

AFFIRMED.